<u>Providence Steel, Inc. v. The Union Central Life Insurance Company</u>,
C.A. No. 04-10440-NG (D. Mass.)

# SETTLEMENT AGREEMENT

**March 3, 2004**

### THE UNION CENTRAL LIFE INSURANCE COMPANY GROUP INSURANCE POLICYHOLDERS SETTLEMENT AGREEMENT

**THIS GROUP INSURANCE POLICYHOLDERS SETTLEMENT AGREEMENT**

(the "Settlement Agreement") is made and entered into as of the 3rd day of March, 2004, by and among The Union Central Life Insurance Company ("Union Central") and the Settlement Class (as defined herein) to settle and resolve with finality all Released Claims against Union Central as set forth herein;

**WHEREAS**, on October 20, 1998, counsel representing the Settlement Class ("Class Counsel"), filed a complaint on behalf of a nationwide class of employers that procured group insurance policies, insured and administered by Royal Maccabees Life Insurance Company n/k/a Reassure America Life Insurance Company ("Royal"), alleging that Royal had, <u>inter alia</u>, improperly billed these employers for life insurance and/or disability benefits that were not in effect due to Age-based Reductions In Benefits (as defined herein) and that Royal had been unjustly enriched by these overpayments.  As amended, such action is pending in the United States District Court for the District of Massachusetts and styled, <u>Shabshelowitz, et al. v. Royal Maccabees Life Insurance Company n/k/a Reassure America Life Insurance Company</u>, C.A. No. 98-12121-NG (D. Mass.) (the "Royal Action");

**WHEREAS**, Royal sold its group insurance business to Union Central on or about August 4, 1999, and, as part of this sale, Union Central acquired those group life and disability insurance policies (i) written by Royal, (ii) in force after January 1, 1999, and (iii) administered by Royal immediately preceding the date of the sales agreement, including, without limitation, policy number 01285 issued to Providence Steel, Inc. ("Providence Steel");

**WHEREAS**, on March 10, 2003, the United States District Court for the District of Massachusetts certified a class in the Royal Action, and on January 15, 2004, clarified the definition of such class to encompass:

All employers, whether persons, partnerships, corporations or other entities, who or that:

(A)  purchased Group Insurance Policies that were insured and administered by Royal Maccabees Life Insurance Company n/k/a Reassure America Life Insurance Company ('Defendant") at any time on or after October 20, 1992;

(B)  were billed by and paid premiums to Defendant at any time between October 20, 1992 and December 31, 1998, that were not reduced to reflect the amount of benefits in effect based on the ages of the certificateholders; and

(C)  were not fully credited with such overpaid premiums by Defendant in their next billing statement.

For purposes of this class definition, "Group Insurance Policies" shall mean those insurance policies that provided life insurance (basic or supplemental) and/or accidental death and dismemberment coverage for the policyholders' current and/or former employees, and contained age-based reduction of benefit clauses.

Specifically excluded from the plaintiff class are federal judges and magistrates and their immediate families, Defendant, any parent, subsidiary or affiliate of Defendant, any entity in which Defendant has a controlling interest, and Defendant's officers, directors, employees and their immediate families.;

**WHEREAS**, Class Counsel will, within five (5) days of the execution of this Settlement Agreement, file a complaint on behalf of Providence Steel and all other similarly situated employers whose group insurance policies were insured and administered by Union Central and/or Royal on or after January 1, 1999, alleging that Union Central and/or Royal have, inter alia, improperly received premiums from these policyholders for life insurance and/or accidental death and dismemberment benefits that were not in effect and/or were less than the corresponding premiums paid due to Age-based Reductions In Benefits, and that Union Central

has been unjustly enriched by these overpayments (the "Class Action");

**WHEREAS**, in response to the Royal Action, Union Central conducted an investigation of its records with respect to the improper billing of group policyholders for life insurance and accidental death and dismemberment benefits that were not in effect and/or were less than the corresponding premiums paid due to Age-based Reductions In Benefits.  As a result of its investigation, Union Central identified a number of policyholders who had been improperly billed for life insurance and/or disability benefits that were not in effect due to Age-based Reductions In Benefits.  Union Central determined that these over-billed accounts primarily included accounts that were specially coded for reduction and accounts that were standard coded for reduction with benefits based on earnings.  Union Central also determined, however, that the computer billing system failed to automatically reduce a number of standard coded accounts with benefits based on flat amounts;

**WHEREAS**, in the spring of 2000 and 2001, Union Central issued partial credits to some of the policyholders that Union Central had identified during its investigation as having paid premiums for life insurance and/or accidental death and dismemberment benefits that were not in effect and/or were less than the corresponding premiums paid due to Age-based Reductions In Benefits;

**WHEREAS**, Class Counsel have sought and obtained substantial discovery from Union Central as part of litigating the Royal Action and in furtherance of this Settlement Agreement; have reviewed and analyzed thousands of pages of documents, including the various List Reports (as defined herein) and Integrity Reports (as defined herein); have conducted numerous depositions (including Rule 30(b)(6) depositions of Royal and Union Central, as well as

4

depositions of their employees); and have engaged in extensive discussions with Union Central's counsel and personnel concerning the identification of potential members of the Settlement Class, the extent of over-billing, the prior and future billing practices and procedures of Union Central, the prior and future crediting and refunding practices and procedures of Union Central and other issues relevant to the case;

**WHEREAS**, Union Central represents that, as a result of the settlement negotiations with Class Counsel, Union Central, in March 2003, made programming changes to its computer billing system to improve the capability of the system to promptly, accurately and automatically adjust the premiums billed a policyholder as of the effective date of change when Age-based Reductions In Benefits occurs;

**WHEREAS**, on or about June 2, 2003, Union Central entered into asset purchase, reinsurance and administrative services agreements with American United Life Insurance Company ("AUL"), whereby AUL purchased most of Union Central's Group Insurance Operations, including substantially all of Union Central's group life insurance and group disability benefits business, and effective June 3, 2003, AUL began providing all administrative services for substantially all of the Group Insurance Policies.  In connection with this Settlement Agreement, Union Central informed AUL of the pending lawsuit against Royal and of the pending claims against Union Central.  Union Central will arrange for AUL's cooperation with Union Central in the implementation of the terms of this settlement.

**WHEREAS,** Class Counsel have concluded, after due investigation and after carefully considering the claims asserted in the Royal Action, the legal and factual defenses thereto, the applicable law, and other relevant circumstances, that it would be in the best interests of the

Settlement Class to enter into this Settlement Agreement in order to assure that the benefits

reflected herein are obtained for the Settlement Class and, further, that Class Counsel consider

the settlement set forth herein to be fair, reasonable and adequate and in the best interests of all

members of the Settlement Class, especially considering that this Settlement Agreement shall not

impair, negate or compromise the claims asserted against Royal in the Royal Action;

**WHEREAS**, Union Central, despite its belief that it has good defenses to any claims that

may be asserted on behalf of the Settlement Class, wishes to enter into this Settlement

Agreement solely to avoid the further expense, inconvenience and burden of protracted litigation

and any other present or future litigation arising out of the facts that gave rise to the Royal

Action and the distraction and diversion of its personnel and resources, and thereby to put to rest

this controversy with the Settlement Class and to avoid the risks inherent in uncertain complex

litigation;

**WHEREAS**, this Settlement Agreement shall not be deemed or construed to be an

admission or evidence of the truth of any of the claims or allegations that may be set forth by the

Settlement Class;

**WHEREAS**, Union Central and Class Counsel, on behalf of the Settlement Class, agree

to be bound by the terms of this Settlement Agreement and to fully support this Settlement

Agreement;

**WHEREAS**, Union Central and Class Counsel, on behalf of the Settlement Class, agree

that the Settlement Class preserves all rights and causes of action against Royal (with the

exception of claims for Overpaid Premiums, as that term is defined herein), and that nothing in

this Settlement Agreement shall impair, negate or compromise claims against Royal for anything

6

other than Overpaid Premiums (as that term is defined herein); and

**WHEREAS**, arms' length settlement negotiations have taken place between Class

Counsel and Union Central, which have resulted in this Settlement Agreement, including its

schedule and exhibits, which embodies the terms and conditions of the settlement among Union

Central and the Settlement Class, subject to Final Approval, as provided herein;

**NOW, THEREFORE**, it is agreed by and among the undersigned, on behalf of Union

Central and the Settlement Class, that the Class Action shall be settled, compromised and

dismissed on the merits and with prejudice and, except as hereafter provided, without costs to the

Settlement Class or Union Central, subject to Final Approval, on the following terms and

conditions:

## I. DEFINITIONS

A.      <u>Class Definition</u>:  Subject to the approval of the Court (as defined in paragraph

**I.C.7**), and for the purposes of this Settlement Agreement only, the undersigned agree and

consent to the certification of a Settlement Class as set forth below:

All employers, whether persons, partnerships, corporations or other
entities, who or that:

(A)  were policyholders of Group Insurance Policies that were insured and
administered by The Union Central Life Insurance Company ("Union Central")
and/or Royal Maccabees Life Insurance Company, now known as Reassure
America Life Insurance Company ("Royal"), at any time after January 1, 1999;

(B)  paid premiums to Union Central and/or Royal at any time on or after
January 1, 1999, that were not reduced to reflect the amount of benefits in effect
based on the ages of the certificateholders; and

(C) were not credited with such overpaid premiums by Union Central
and/or Royal in their next billing statement.

For purposes of this class definition, "Group Insurance Policies"
shall mean those insurance policies that provided life insurance (basic or

supplemental) and/or accidental death and dismemberment coverage for the policyholders' current and/or former employees, and contained age-based reductions of benefits clauses.

Specifically excluded from the Settlement Class are Federal Judges and Magistrates and their immediate families, Union Central and Royal, any parent, subsidiary or affiliate of Union Central or Royal, any entity in which Union Central or Royal has a controlling interest, and Union Central's and Royal's officers, directors, employees and their immediate families.

Also excluded from the Settlement Class shall be any employers who or that submit a valid Request for Exclusion in accordance with the procedures set forth in paragraph **IV.B**, below.

B.    <u>Class Representative</u>:  For purposes of this Settlement Agreement only, plaintiff Providence Steel shall be designated as Class Representative.  It is hereby agreed, for purposes of this Settlement Agreement only, that the claims of the Class Representative are typical of the claims of the Settlement Class and that the Class Representative is an adequate representative of the Settlement Class.

C.    <u>General Definitions</u>:  The following terms shall have the following meanings for purposes of this Settlement Agreement:

1.    "Age-based Reductions In Benefits" means the adjustment of life insurance (basic and/or supplemental) and/or accidental death and dismemberment benefits available to a certificateholder in accord with the clause of the respective group insurance policy that reduces such life insurance and/or accidental death and dismemberment benefits by a specified percentage or amount upon the certificateholder's attainment of a certain age (<u>e.g.</u>, age sixty-five or seventy).

2.    "Alleged Conduct" means Union Central's and/or Royal's receipt of premiums on Home Office Administered Group Insurance Accounts at any time on or after January 1, 1999 for benefits that were not in effect and/or were less than the corresponding premiums paid due to Age-based Reductions In Benefits.

3.    "Attorneys' Fees Payment Date" means the date 10 days after: (a) Final Approval has been obtained; (b) the Court has entered an order approving the award of fees to Class Counsel; and (c) either (i) the time to appeal, or to seek permission to appeal, the Court's entry of an order approving the award of fees to Class Counsel has expired with no appeal

having been taken or permission to appeal having been sought and granted; or (ii) the Court's order approving the award of fees to Class Counsel has been affirmed in its entirety by the court of last resort to which any appeal has been taken or petition for review has been presented and such affirmance has become no longer subject to the possibility of further appeal.

4.    "Billing History" means the amount of premiums billed a Home Office Administered Group Insurance Account for the period from January 1, 1999 to the present, as evidenced by the original billing statements, re-created billing statements, Certificateholder History computer print-outs, Certificateholder Listing computer print-outs and/or any other similar document or evidence.

5.    "Class Action" means the lawsuit, styled *Providence Steel, Inc.  v. The Union Central Life Insurance Company*, that Class Counsel will file in accord with the provisions of paragraph **II.A**, below, which lawsuit shall be based on allegations and claims for relief that are substantially similar to those raised in the Royal Action, but only for premiums that were paid on or after January 1, 1999.

6.    "Class Counsel" means the firms Ellis & Rapacki LLP and Assiran, Ellis & Devlin.

7.    "Court" means the United States District Court for the District of Massachusetts.

8.    "Current Policyholders" means those members of the Settlement Class whose group insurance policies with Union Central or AUL are still in effect as of the date of Preliminary Approval of the Settlement Agreement.

9.    "Final Approval" means that: (a) this Settlement Agreement has been approved by the Court, and entry has been made, as provided in paragraph **IV.C** below, of the final judgment of dismissal substantially in the form of Exhibit **3** hereto; and (b) either (i) the time to appeal, or to seek permission to appeal, the Court's entry of an order of final judgment has expired with no appeal having been taken or permission to appeal having been sought and granted; or (ii) the Court's order of final judgment has been affirmed in its entirety by the court of last resort to which any appeal has been taken or petition for review has been presented and such affirmance has become no longer subject to the possibility of further appeal.

10.    "Former Policyholders" means those members of the Settlement Class whose group insurance policies with Royal,Union Central and/or AUL were cancelled at any time between January 1, 1999 and the date of Preliminary Approval of the Settlement Agreement.

11.    "Home Office Administered Group Insurance Account" means those group insurance accounts, including all Group Insurance Policies, that Union Central and/or Royal were responsible for administering, including the responsibility for calculating premiums and generating the bills that were issued to the respective policyholders.

9

12.    "Integrity Reports" means those monthly reports generated by Union Central's computer billing system during the period from 1999 through 2003 that are each entitled, Integrity Report, and all accompanying computer print-outs each entitled, Billing Maintenance – Certificateholder Adjustment, that together, inter alia, identify (by policy number, billing mode, reduction type, billing type, benefit class, benefit type, class benefit amount, effective date of change, age of first age-based reduction, social security number, name, date of birth, age, volume of benefits currently billed, reduced amount, effective date of reduction and current earnings) certificateholders of group insurance accounts that are specially coded for reduction, have salary-based benefits or are standard coded for reduction but not automatically reduced by the computer billing system who are over the age of sixty-five (65), and that may reflect the credit or refund amount owed and/or issued to the respective policyholder of such accounts resulting from the billing of premiums for benefits that were not in effect for the identified certificateholders due to the Age-based Reductions In Benefits.

13.    "List Reports" means all manner of lists identifying potential members of the Settlement Class that were generated and/or produced by Union Central as a result of the Royal Action, as part of Union Central's own investigation with respect to the improper billing of policyholders for life insurance and/or disability benefits that were not in effect due to Age-based Reductions in benefits and/or in furtherance of or as part of the negotiations leading to this settlement.  Specifically, these lists identify all Home Office Administered Group Insurance Accounts that have or had a certificateholder over the age of 65, which accounts: (a) were either (i) active at any time on or after January 1, 1999, or (ii) were cancelled at any time after January 1, 1999; and (b) were either (i) specially coded for reduction, or (ii) standard coded for reduction with benefits based on earnings.

14.    "Overpaid Premiums" means that portion of the premium amounts paid by a Home Office Administered Group Insurance Account policyholder at any time on or after January 1, 1999, for which no and/or less than corresponding benefits were in effect due to Age-based Reductions In Benefits and which were not credited or refunded in the policyholder's next billing statement after the over-billing first began.

15.    "Parties" means the Settlement Class and the Settling Defendant (each of which individually is a "Party").

16.    "Plaintiff's Lead Counsel" means Fredric L. Ellis of Ellis & Rapacki LLP.

17.    "Potential Settlement Class Members List" means the list report that identifies, among other things, (a) about one thousand six hundred and twenty (1,620) policyholders (by policy number, policyholder name and last known address) who potentially qualify as members of the Settlement Class; and (b) certificateholders (by name, date of birth and social security number) of all such policyholders identified in subsection (a), above, for which the policyholders were potentially billed premiums for benefits that were not in effect due to Age-based Reductions In Benefits.

18.    "Preliminary Approval" means an order by the Court preliminarily

10

approving this Settlement Agreement, and approving the form and method of notice to the Settlement Class, pursuant to a motion as described in paragraph **IV.A**, below, and substantially in the form of Exhibit **2** hereto.

19.     "Providence Steel" means Providence Steel, Inc.

20.     "Released Claims" means all manner of claims, demands, actions, suits, and causes of action, whether class, individual or otherwise in nature, damages whenever incurred, liabilities of any nature whatsoever (including costs, expenses, penalties and attorneys' fees), whether known or unknown, suspected or unsuspected, asserted or unasserted, in law or equity, statutory or common law, that any Releasing Party, whether directly, representatively, derivatively or in any other capacity, ever had, now has or hereafter can, shall or may have, with respect to the Overpaid Premiums and/or the Alleged Conduct, including claims alleging damages or unjust enrichment caused by or resulting from Union Central's over-billing of policyholders for any reason related to the ages of the certificateholders, and including claims made against Royal in the Class Action (as that term is defined herein) for Overpaid Premiums (as that term is defined herein) resulting from Royal's Alleged Conduct (as that term is defined herein); provided, however, that nothing in this Settlement Agreement shall release, impair, negate or compromise any claim with respect to premiums received by Royal prior to January 1, 1999.

21.     "Released Party" means Union Central, its respective present and former direct and indirect parents, subsidiaries, divisions, departments, joint ventures, affiliates, partnerships, associates, insurers, predecessors, heirs, executors, administrators, trustees, former and present stockholders, officers, directors, employees, agents, representatives, attorneys, successors and assigns of any of the above persons, including, without limitation, AUL as the purchaser, reinsurer, administrator and/or insurer of the Group Insurance Policies and the Home Office Administered Group Insurance Accounts; provided, however, that "Released Party" shall not include Royal nor any of its predecessors, parents, subsidiaries, divisions, departments, joint ventures, affiliates, partnerships, associates, heirs, executors, trustees, former and present stockholders, officers, directors, employees, agents, representatives, attorneys, successors and assigns (excluding Union Central) of any of the above persons, with the sole exception that Royal is a "Released Party" with respect to claims made in the Class Action (as that term is defined herein) for Overpaid Premiums (as that term is defined herein) resulting from Royal's Alleged Conduct (as that term is defined herein); provided, further, that nothing in this Settlement Agreement shall release, impair, negate or compromise any claim with respect to premiums received by Royal prior to January 1, 1999.

22.     "Releasing Parties" means all members of the Settlement Class (on their own behalf and on behalf of their heirs, executors, successors, and assigns).

23.     "Request for Exclusion" means a policyholder's election to be excluded from the Settlement Class in accord with the procedures of paragraph **IV.B**, below.

24.     "Royal" means Royal Maccabees Life Insurance Company n/k/a Reassure

America Life Insurance Company.

25.    "Royal Action" means the lawsuit, styled *Shabshelowitz, et al. v. Royal Maccabees Life Insurance Company, n/k/a Reassure America Life Insurance Company*, Civil Action No. 98-12121-NG (D. Mass.), pending in the United States District Court for the District of Massachusetts.

26.    "Schedule of Benefits" means the computer print-outs or other documents that reflect the number of classes, a description of each class, the benefit amounts of each class, the Age-based Reductions In Benefits clause and the premium rates of the respective Group Insurance Policy.

27.    "Settlement Agreement" means this The Union Central Life Insurance Company Group Insurance Policyholders Settlement Agreement, including its schedule and exhibits.

28.    "Settlement Class Members List" means the list report that:  (a) identifies (by policy number, policyholder name and last known address) all policyholders who qualify as members of the Settlement Class; (b) identifies (by name, date of birth and social security number) all certificateholders of all such policyholders identified in subsection (a), above, for which the policyholders were billed premiums for benefits that were not in effect and/or were less than the corresponding premiums paid due to Age-based Reductions In Benefits; and (c) quantifies the amount of credit or refund paid and/or to be paid to each such policyholder identified in subsection (a), above.

29.    "Settling Defendant" means Union Central.

30.    "Union Central" means The Union Central Life Insurance Company.

## II. SETTLEMENT PROCEDURE

A.    <u>Filing Of Class Action Complaint</u>:  Within five (5) days from the date of this Settlement Agreement, Class Counsel shall file the Class Action complaint with the Court. Union Central agrees not to contest service of the Class Action, which shall be accomplished by serving via Federal Express Union Central's representative(s) at the address(es) set forth on **Schedule A** hereto.  On the civil action cover sheet required to be filed with the Class Action complaint, Class Counsel shall note that the Class Action is related to the Royal Action.

B.    <u>Identification Of Members Of The Settlement Class And Quantification Of</u>

<u>Overpaid Premiums</u>:  Union Central and Class Counsel have cooperated in good faith to identify

members of the Settlement Class and shall continue to cooperate in good faith to quantify the

amount of Overpaid Premiums for each member of the Settlement Class.  In that regard, Union

Central has produced to Class Counsel the various List Reports and Integrity Reports, and Class

Counsel have compiled the information contained in these various reports to create the Potential

Settlement Class Members List.  From the Potential Settlement Class Members List, the

Settlement Class Members List will be created in the following manner:  For each account

identified on the Potential Settlement Class Members List, Union Central shall quantify: (1) the

total amount of Overpaid Premiums, if any, for each certificateholder; (2) the total amount of

credit or refund of such Overpaid Premiums, if any, that has been paid to the respective

policyholder; and (3) the total amount of credit or refund of such Overpaid Premiums, if any, that

is due to be paid to the respective policyholder.  For purposes of identifying members of the

Settlement Class, where a policyholder misstated the age of a certificateholder to Union Central,

and, considering the correct age of the certificateholder, it is determined that the policyholder

was billed premiums for insurance benefits that were not in effect due to Age-based Reductions

In Benefits, that policyholder will be considered a member of the Settlement Class.  Class

Counsel shall have the right to verify the amounts of Overpaid Premiums calculated by Union

Central.  When necessary for verifying the amounts of Overpaid Premiums, Union Central shall

provide Class Counsel with the Schedule of Benefits and Billing History for each such account

requested by Class Counsel.  Only those policyholders identified on the Potential Settlement

Class Members List who paid Overpaid Premiums will be included on the Settlement Class

Members List.

Union Central shall bear all costs and expenses associated with this identification and quantification process.

C.    Dispute As To Identity Of Class Member And/Or Amount Of Overpaid Premiums:  If Union Central and Class Counsel are unable to reach an agreement as to whether a policyholder qualifies as a member of the Settlement Class and/or are unable to reach an agreement as to the amount of any Settlement Class member's Overpaid Premiums, the following procedure shall be employed at Union Central's sole expense to resolve each such dispute: (1) Union Central and Class Counsel shall notify, by certified mail, return receipt requested, the respective policyholder or member of the Settlement Class of the dispute, and shall afford the respective policyholder or member of the Settlement Class with the opportunity to respond and submit any available records (including billing statements) concerning its position as to its status as a class member and/or the calculation as to the amount of the Overpaid Premiums; (2) if the respective policyholder or member of the Settlement Class does not respond and take a position as to its status as a class member and/or the calculation as to the amount of the Overpaid Premiums within thirty (30) days from the date that notice was sent pursuant to subsection (1), above, then Union Central's position shall be deemed conclusive; (3) if the respective policyholder or member of the Settlement Class responds and takes a position as to its status as a class member and/or calculation as to the amount of the Overpaid Premiums, but there is still no agreement between Union Central and Class Counsel, Union Central and Class Counsel shall select a retired judge mutually agreeable to them to render a final, non-appealable decision on each such dispute; (4) Union Central and Class Counsel shall submit their respective

14

conclusions as to the dispute, the conclusion reached by the respective policyholder or Settlement Class member, the List Reports, the Schedule of Benefits of the respective policy and the Billing History for the respective account to the retired judge, and shall endeavor to provide all other documents and materials reasonably requested by the retired judge that are necessary to render a decision on such disputed amount; and (5) the retired judge shall render a final, non-appealable written decision based solely on the information provided to him or her pursuant to subsection (4), above.

D.    <u>Credits Or Refunds To Settlement Class Members</u>:  Each member of the Settlement Class shall receive a full credit or full refund of their Overpaid Premiums (less all Overpaid Premiums previously credited or refunded to such member of the Settlement Class). Union Central shall work with AUL to credit the accounts of Current Policyholders for the full amount of the respective class member's Overpaid Premiums, or shall issue cash refunds to the Current Policyholders of the full amount of the respective class member's Overpaid Premiums. Union Central shall issue cash refunds to the Former Policyholders of the full amount of the respective class member's Overpaid Premiums.  Union Central shall issue or pay all such credits or refunds in accord with the procedure outlined in paragraph **VI.B.1**, below.

E.    <u>Treatment Of Settlement Class Members No Longer In Business</u>:  Where a member of the Settlement Class is no longer in business and a payment is due to that Settlement Class member pursuant to paragraph **II.D**, above, the payment, upon proper notification and documentation, shall be made to the person or entity legally entitled to the assets of that Settlement Class member in accord with the procedure outlined in paragraph **VI.B.1**, below.  If no such person or entity can be identified, the amount of such payment shall be made to a

charitable organization jointly selected by Union Central and Class Counsel and approved by the Court.

F.    <u>Payment To Class Representative</u>:  Over and above the payments described in paragraph **II.D**, above, Union Central shall remit additional payment in the amount of two thousand dollars ($2,000) to the Class Representative, Providence Steel.  Union Central shall make this additional payment to the Class Representative in accord with the procedure outlined in paragraph **VI.B.2**, below.

G.    <u>Remedial Action</u>:  Union Central has made a good faith effort to improve the billing system so that, from this time forward, the premiums billed on all Home Office Administered Group Insurance Accounts are appropriately adjusted to reflect Age-based Reductions In Benefits.  As part of that effort, Union Central represents that it has made programming changes to its computer billing system to improve the capability of the system to promptly, accurately and automatically adjusts the premiums billed a policyholder as of the effective date of change when Age-based Reductions In Benefits occurs.

H.    <u>Attorneys' Fees</u>:  As an additional payment over and above the amounts set forth in paragraph **II.D** and **II.F** above, Union Central agrees to pay, subject to Court approval, Class Counsel's attorneys' fees and expenses in the amount of ninety thousand dollars ($90,000). Union Central further agrees not to object to Class Counsel's request for an award of attorneys' fees and expenses in such amount and agrees not to appeal an award of attorneys' fees in such amount.  Class Counsel agree not to seek or demand payment of fees and expenses from Union Central beyond those provided for in this paragraph.  In the event attorneys' fees amounting to less than those provided for in this paragraph are ultimately approved by the Court, the

difference between the amount of attorneys' fees approved and the amount specified in this paragraph shall be retained by Union Central, and not paid as additional consideration to the Settlement Class.   It is expressly understood and agreed that Class Counsel's attorneys' fees shall be paid by Union Central as an amount in addition to, and separate from, the payments and benefits available to the Settlement Class members under this Settlement Agreement, and that under no circumstances shall Class Counsel's attorneys' fees be deducted from the payments and benefits available to the Settlement Class members.   Union Central shall make the attorneys' fees payment in accord with the procedure outlined in paragraph **VI.B.3**, below.

### III.  NOTICE PROCEDURE

A.     <u>Notice to Settlement Class</u>:  Within sixty (60) days from the date of Preliminary Approval of this Settlement Agreement, Union Central shall provide notice to the Settlement Class, as identified in the Settlement Class Members List, substantially in the form of Exhibit **1** hereto, and in the following manner: by sending to each member of the Settlement Class, as identified in the Settlement Class Members List, the written Notice as a separate mailing to the last known address of each Settlement Class member.  Such mailings shall be prominently marked on the outside with the words, **IMPORTANT: LEGAL NOTICE ENCLOSED**.  If a mailing to a member of the Settlement Class is returned with a forwarding address provided by the Post Office, Union Central will cause it to be re-mailed to the address or addresses provided. Union Central will also utilize skip tracing to attempt to forward such mailings if no forwarding address is provided by the Post Office.  Union Central shall bear all costs and expenses associated with providing notice to the Settlement Class members.

17

## IV.  COURT APPROVAL

Union Central and Class Counsel shall cooperate in seeking approval of this Settlement Agreement by the Court in accordance with the following procedure.

A.     <u>Motion for Preliminary Approval</u>:  On or before sixty (60) days after the date of this Settlement Agreement, Class Counsel and Union Central shall submit to the Court a joint motion for Preliminary Approval of this Settlement Agreement and for a stay of all proceedings in the Class Action against Union Central until the Court renders a final decision regarding approval of the settlement and, if he or she approves the settlement, enters the final judgment of dismissal substantially in the form of Exhibit **3** hereto.

The motion for Preliminary Approval shall include: (1) this Settlement Agreement, including the schedule and all exhibits; and (2) the proposed form of order preliminarily approving this Settlement Agreement, substantially in the form of Exhibit **2** hereto, which the Court may sign.  Union Central and Class Counsel shall request that a decision be made promptly on the papers or that a hearing on the motion for Preliminary Approval of this Settlement Agreement be held at the earliest date convenient to the Court.

B.     <u>Requests for Exclusion from the Settlement Class</u>:  Request for Exclusion from the Settlement Class shall be mailed to:  The Union Central Life Insurance Company Group Policyholders Litigation Settlement Exclusions, P.O. Box ___, Boston, MA 02114, and shall list the policyholder name, address, account number, the dates that the respective policy was in effect and a statement that the policyholder seeking exclusion wishes to be excluded from the Settlement Class.  The Request for Exclusion shall be signed by a principal, partner, corporate officer or authorized representative of the potential Settlement Class member.  If a Request for

Exclusion does not include all of the foregoing information, or is not signed by a principal, partner, corporate officer or authorized representative of the potential Settlement Class member, it shall not be a valid Request for Exclusion and the policyholder filing such an invalid Request for Exclusion shall be a member of the Settlement Class.  All policyholders that properly file Requests for Exclusion from the Settlement Class shall not be members of the Settlement Class and shall have no rights with respect to this Settlement Agreement.  Copies of all Requests for Exclusion shall be made available by Class Counsel to Union Central.

Each member of the Settlement Class that does not submit a properly completed Request for Exclusion no later than thirty (30) days before the final approval hearing shall be included in the Settlement Class.  For purposes of determining timeliness, a Request for Exclusion shall be deemed to have been submitted when mailed, if a postmark is indicated on the envelope and it is mailed, postage prepaid and addressed in accordance with the instructions in the Notice or, otherwise, when received.

C.    <u>Motion for Final Approval and Entry of Judgment</u>:  No later than fourteen (14) days prior to the final approval hearing established by the Preliminary Approval order, Class Counsel and Union Central shall submit a joint motion for Final Approval of this Settlement Agreement, which shall request that the Court enter an order, substantially in the form of Exhibit **3** hereto:

1.    fully and finally approving the certification of the Settlement Class for settlement purposes only;

2.    fully and finally approving the Settlement Agreement, and each of its terms, as being a fair, reasonable, and adequate settlement for the Settlement Class, and directing

19

consummation of the Settlement Agreement pursuant to its terms and conditions;

       3.     directing that the Class Action be dismissed with prejudice, and, except as provided for herein, without costs;

       4.     discharging and releasing Union Central from all Released Claims;

       5.     determining that there is no just reason for delay, and that the judgment of dismissal of the Class Actions shall be final and appealable; and

       6.     reserving continuing jurisdiction over the administration and enforcement of this Settlement Agreement.

### V. RELEASES

A.    <u>Releases and Covenants Not to Sue</u>:  In addition to the effect of any final judgments entered in accordance with this Settlement Agreement, on and as of the date of Final Approval, Union Central and each Released Party shall be released and forever discharged from all Released Claims by each Releasing Party, <u>provided</u>, <u>however</u>, that it is expressly acknowledged that any release of claims in this Settlement Agreement is not intended to, and shall not, impair, negate or compromise claims against Royal for anything other than Overpaid Premiums (as that term is defined herein).  In addition, each Releasing Party hereby covenants and agrees that he, she or it shall not, hereafter, assert any claim, demand, action, suit, or cause of action, whether directly, representatively, derivatively or in any other capacity, against Union Central or any Released Party with respect to the Released Claims.

B.    <u>Waiver of Claims</u>:  Each Releasing Party hereby acknowledges that he, she or it may hereafter discover facts other than or different from those that he, she or it knows or believes to be true with respect to the subject matter of the Released Claims that such Releasing

Party has released pursuant to paragraph **V.A**, above, but each Releasing Party hereby expressly agrees that, on and as of the date of Final Approval, he, she or it shall have waived and fully, finally and forever settled and released any known or unknown, suspected or unsuspected, asserted or unasserted, contingent or non-contingent claim with respect to the Released Claims that such Releasing Party has released pursuant to paragraph **V.A**, above, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts.

C.    Effect of Disapproval or Non-Approval:  If the Court disapproves or refuses to finally approve this Settlement Agreement, or if, on appeal, any order granting final approval is set aside, or if Final Approval is not obtained for any reason, then (i) the settlement described herein shall become null and void, and (ii) the releases, covenants not to sue, and waivers set forth in this Section shall not apply to any Released Claims.

1.    Notwithstanding the foregoing, the award of attorneys' fees by the Court in an amount less than the amount specified in paragraph **II.H**, above, shall not be deemed a disapproval, refusal to approve or modification of this Settlement Agreement or any part hereof, and a modification or reversal on appeal of any award of attorneys' fees by the Court shall likewise not be deemed a disapproval, refusal to approve or modification of this Settlement Agreement.

2.    Notwithstanding the foregoing, modification of the notice requirements by the Court shall not be deemed a disapproval, refusal to approve or modification of this Settlement Agreement, except that any modification that would require Class Counsel or the Settlement Class to bear the cost of notice shall be deemed a refusal to approve for purposes of

21

this section, subject to the waiver of Class Counsel.

## VI.  PAYMENT AND SETTLEMENT ADMINISTRATION

A.    <u>No Distribution Required Until Final Approval</u>:  Union Central may, but is not

required to, issue or pay credits or refunds to the Settlement Class members prior to Final

Approval.

B.    <u>Funding and Distribution</u>:  Notwithstanding the provisions of paragraph **VI.A**.,

above, Union Central shall have the following payment obligations:

1.    <u>Distribution to Settlement Class Members</u>:  Within sixty (60) days from

the date of Final Approval, Union Central shall work with AUL to credit the accounts of Current

Policyholders for the full amount of the respective class member's Overpaid Premiums (less all

Overpaid Premiums previously credited or refunded to such member of the Settlement Class), as

described in paragraph **II.B**., above, or shall issue cash refunds to such Current Policyholders of

the full amount of such Overpaid Premiums (less all Overpaid Premiums previously credited or

refunded to such member of the Settlement Class), and shall issue cash refunds to the Former

Policyholders of the full amount of the respective class member's Overpaid Premiums (less all

Overpaid Premiums previously credited or refunded to such member of the Settlement Class).

Union Central shall bear all costs and expenses associated with crediting and refunding the full

amount of the Overpaid Premiums to the Settlement Class members.

Cash refunds to Current Policyholders and Former Policyholders shall be mailed by

Union Central to the last known address of such Settlement Class member (or to the last known

address of the person or entity legally entitled to the assets of that Settlement Class member, as

described in paragraph **II.E**, above).  If any such mailing is returned with a forwarding address

22

provided by the Post Office, Union Central will cause it to be re-mailed to the address or addresses provided.  Union Central will also utilize skip tracing to attempt to forward such mailings if no forwarding address is provided by the Post Office.  If no current address can be ascertained, the payment due that Settlement Class member (or that person or entity legally entitled to the assets of that Settlement Class member) shall be made to a charitable organization jointly selected by Union Central and Class Counsel and approved by the Court.

In the event that a refund check is returned to Union Central or Class Counsel or not cashed by a Settlement Class member within one hundred and twenty (120) days from the date the check was mailed, such payment shall be made to a charitable organization jointly selected by Union Central and Class Counsel and approved by the Court.  All refund checks shall note on their face that they are valid only for one hundred and twenty (120) days.

2.    <u>Payments To Class Representative</u>:  Within ten (10) days from the date of Final Approval, Union Central shall make the payment in the amount provided for in paragraph **II.F**, above, to the Class Representative.

3.    <u>Payment of Attorneys' Fees</u>:  On or before the Attorneys' Fees Payment Date, Union Central shall pay, as directed in writing by Plaintiff's Lead Counsel, the amount provided for in paragraph **II.H**, above, or such lesser amount as is approved by the Court.  After making this payment, Union Central shall have fulfilled its obligations pursuant to paragraph **II.H** and shall have no responsibility whatsoever for the attorneys' fees or their distribution.

### VII.    MISCELLANEOUS PROVISIONS

A.    <u>Reasonable Best Efforts to Effectuate this Settlement</u>:  Union Central and Class Counsel agree to undertake their reasonable best efforts, including all steps and efforts

contemplated by this Settlement Agreement and any other steps and efforts that may be

necessary or appropriate, by Court order or otherwise, to carry out the terms of this Settlement

Agreement.

B.    Use of Discovery Materials:  Subject to the protective order dated September 18,

2000 entered in the Royal Action, as modified by the Court in its order dated December 28,

2001, and subject to Class Counsel's written agreement to be bound thereby, Union Central

hereby agrees to cooperate in good faith with Class Counsel and to make good faith efforts to

procure AUL's cooperation in producing discovery and making witnesses available for use in the

Royal Action.  Such cooperation shall be limited to providing reasonable access to the Billing

Histories and Schedules of Benefits for any group insurance account, permitting Class Counsel

to interview no more than five (5) current or former Union Central employees and making no

more than three (3) current or former employees of Union Central available for deposition by

Class Counsel.

C.    Warranty as to Solvency:  Union Central warrants that, as of the date of this

Settlement Agreement, that Union Central is not insolvent, nor will its payments under this

Settlement Agreement render it insolvent within the meaning of and/or for the purposes of the

United States Bankruptcy Code.

If a case is commenced with respect to Union Central under Title 11 of the United States

Code (Bankruptcy), or a trustee, receiver or conservator is appointed under any similar law, and

in the event of the entry of a final order of a court of competent jurisdiction determining any

payment made by or on behalf of Union Central pursuant to this Settlement Agreement to be a

preference, voidable transfer, fraudulent transfer or similar transaction, and if pursuant to an

order of a court of competent jurisdiction monies paid by or on behalf of Union Central pursuant to this Settlement Agreement are either not delivered or are returned to Union Central or the trustee, receiver, or conservator appointed by a court in any bankruptcy proceedings with respect to Union Central, the releases given and judgment entered in favor of Union Central pursuant to this Settlement Agreement shall be null and void.

D.    Consent to Jurisdiction:  Union Central and each member of the Settlement Class hereby irrevocably submit to the exclusive jurisdiction of the Court for any suit, action, proceeding or dispute arising out of or relating to this Settlement Agreement, or the applicability of this Settlement Agreement and its exhibits and schedule.  Nothing herein shall be construed as a submission to jurisdiction for any purpose other than enforcement of this Settlement Agreement.

E.    Binding Effect:  This Settlement Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the Parties hereto.

F.    Authorization to Enter Settlement Agreement:  Each undersigned representative of Union Central covenants and represents that such representative is fully authorized to enter into and to execute this Settlement Agreement on behalf of Union Central.  Plaintiff's Lead Counsel represents that he is fully authorized to conduct settlement negotiations with Union Central on behalf of the Class Representative and to enter into, and to execute, this Settlement Agreement on behalf of Class Counsel and the Settlement Class, subject to Court approval.

G.    Notices:  All notices to the parties under this Settlement Agreement shall be in writing.  Each such notice shall be given by: (1) hand delivery; (2) registered or certified mail, return receipt requested, postage pre-paid; or (3) Federal Express or similar overnight courier,

and shall be addressed, if directed to the plaintiff or any member of the Settlement Class, to Plaintiff's Lead Counsel at the address set forth on **Schedule A** hereto, and if directed to Union Central, to its representative(s) at the address(es) set forth on **Schedule A** hereto, or such other address as Plaintiff's Lead Counsel or Union Central may designate, from time to time, by giving notice to Union Central and Plaintiff's Lead Counsel in the manner described in this paragraph.

H.     <u>No Admission</u>:  Whether or not this Settlement Agreement becomes final, the Parties expressly agree that this Settlement Agreement and its contents, including its exhibits and schedule, and any and all statements, negotiations, documents and discussions associated with it, shall not be deemed or construed to be an admission or evidence of any violation of any statute or law or of any liability or wrongdoing or of the truth of any of the claims or allegations contained in the complaint in the Class Action.

I.     <u>Headings</u>:  The headings used in this Settlement Agreement are intended for the convenience of the reader only and shall not affect the meaning or interpretation of this Settlement Agreement.

J.     <u>No Party Is the Drafter</u>:  None of the Parties hereto shall be considered to be the drafter of this Settlement Agreement or any provision hereof for the purpose of any statute, case law or rule of interpretation or construction that would or might cause any provision to be construed against the drafter hereof.

K.     <u>Choice of Law</u>:  All terms of this Settlement Agreement and the exhibits and schedule hereto shall be governed by and interpreted according to the substantive laws of the Commonwealth of Massachusetts without regard to its choice of law or conflict of laws principles.

L.    <u>Successors</u>:  Upon Final Approval of this Settlement Agreement, it shall be binding upon and inure to the benefit of the Parties and their respective heirs, executors, administrators, successors and assigns and upon any corporation, partnership or other entity into or with which any such Party may merge or consolidate.

M.    <u>Amendment; Waiver</u>:  This Settlement Agreement shall not be modified in any respect except by a writing executed by all Parties hereto, and the waiver of any rights conferred hereunder shall be effective only if made by written instrument of the waiving Party.  The waiver by any Party of any breach of this Settlement Agreement shall not be deemed or construed as a waiver of any other breach, whether prior, subsequent or contemporaneous, of this Settlement Agreement.

N.    <u>Execution in Counterparts</u>:  This Settlement Agreement may be executed in counterparts.  Facsimile signatures shall be considered as valid signatures as of the date and time of delivery, although the original signature pages shall thereafter be appended to this Settlement Agreement and filed with the Court.

O.    <u>Integrated Agreement</u>:  This Settlement Agreement contains an entire, complete, and integrated statement of each and every term and provision agreed to by and among the Parties hereto, and it is not subject to any condition not provided for herein.

P.    <u>Retention of Jurisdiction</u>:  The administration and consummation of the Settlement Agreement as provided herein shall be under the authority of the Court.

**IN WITNESS WHEREOF**, the Parties hereto, through their fully authorized representatives have agreed to this Settlement Agreement on the date first herein above written.

**PLAINTIFF'S LEAD COUNSEL**

By: ____s/Fredric L. Ellis_____
    Fredric L. Ellis
    ELLIS & RAPACKI LLP

*on behalf of Class Counsel and the Settlement Class*

**COUNSEL FOR THE UNION CENTRAL LIFE
INSURANCE COMPANY**

By: _____s/S. David McNeill_____
    S. David McNeill
    *On behalf of Union Central*

28