UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PROVIDENCE STEEL, INC., individually and on behalf of a class of persons similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>THE UNION CENTRAL LIFE INSURANCE COMPANY,<br><br>    Defendant. | CIVIL ACTION NO: 04-10440-NG |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF JOINT MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT,
CONDITIONAL CERTIFICATION OF SETTLEMENT CLASS AND
COMMENCEMENT OF SETTLEMENT PROCESS**

**INTRODUCTION**

Plaintiff Providence Steel, Inc. ("Plaintiff"), individually and on behalf of a class of persons similarly situated, files this memorandum in support of the Joint Motion for Preliminary Approval of Partial Class Action Settlement, Conditional Certification of Settlement Class and Commencement of Approval Process (the "Joint Motion"), which is filed herewith.  The Joint Motion seeks preliminary approval of a proposed settlement of all claims in the above-captioned action against the defendant, The Union Central Life Insurance Company ("Union Central") pursuant to the terms of The Union Central Life Insurance Company Group Insurance Policyholders Settlement Agreement dated March 3, 2004 (the "Settlement Agreement").

**PRIOR PROCEEDINGS**

This case arose out of the related litigation, *Shabshelowitz et al. v. Royal Maccabees Life Insurance Company n/k/a Reassure America Life Insurance Company*, C.A. No. 98-12121-NG (D. Mass.) (the "Royal action"). The Royal action was filed on October 20, 1998, alleging that the defendant Royal Maccabees Life Insurance Company n/k/a Reassure America Life Insurance Company ("Royal") had been unjustly enriched by billing and collecting premiums from group policyholders[1] for life insurance and accidental death and dismemberment benefits that were not in effect for certain certificateholders.[2] Specifically, the complaint, as later amended in the Royal action, and the complaint against Union allege that the group insurance policies contained an age-based reduction of benefits clause, and that Royal (and later, Union) was aware of the certificateholders' age and the reduction in benefits when a certificateholder turned the age of 65 of 70, yet continued to bill the policyholder for premiums based upon the non-reduced amount of benefits.[3]

Since 1998, the Royal action has been extensively litigated with Royal producing limited documents and numerous depositions conducted. Approximately ten months after the Royal action was commenced, in August 1999, Royal sold its group insurance business to Union Central. As part of the sale, Union acquired these group insurance policies which were, (i) written by Royal, (ii) in force after January 1, 1999 and (iii) administered by Royal immediately preceding the date of the sales agreement, including, Group Policy No. 01285 issued to Providence Steel.

---

[1] Policyholders are employers who maintained group insurance polices for their employees, including life insurance and accidental death and dismemberment (AD&D) insurance.

[2] Certificateholders are the persons covered under the group insurance policy.

[3] The amount of premiums owed was based on the total volume of the insurance benefits in effect, with the rate being calculated per thousand dollars of benefits.

In the Royal action, after litigating numerous discovery disputes and defeating two motions for summary judgment, Plaintiffs moved for class certification. On March 10, 2003, this Court certified a plaintiff class against Royal.[4]

During the litigation against Royal, it became clear that Royal had not corrected its computer billing programs so that premiums would be reduced when an age-based reduction in benefits occurred prior to the sale of the group insurance business to Union Central. Thus, the overcharging of group policyholders continued after August 1999. As a result of depositions taken of Union Central personnel (most of them being former Royal employees), Union Central's attorneys and executives became fully aware of the overcharging. Settlement discussions began with Union Central in the spring of 2002. After over a year of Union Central conducting an investigation, with the assistance of Plaintiff's counsel, into identifying the overcharged accounts, Union Central was able to identify three types of accounts where overcharging may have occurred. The three types were 1) specially coded accounts (coded "4" or "5" out a 1 – 9 coding system), 2) standard coded accounts (coded 1-3 or 6-9) where insurance benefits were based on the amount of a certificateholder's annual salary, and 3) certain standard coded non-wage based accounts.[5] For the first two categories, Union Central was able to print out lists which identified all such accounts that had been active at any time since January 1, 1999, and had a certificateholder over the age of 65 since that date. As to the third category, a review of all the available Integrity Reports generated since 1999 revealed approximately 150 standard coded non-wage based accounts where the amounts billed did not match the amounts of

---

[4] On January 15, 2004 this Court amended the class definition in the Royal case to, *inter alia*, include only those overpayments made through December 31, 1998.

[5] This third category of overbilled accounts occurred due to a computer "glitch." All bills for standard non-wage based accounts were supposed to reduce automatically by the computer when an age-based reduction occurred; however, the computer system was designed to do this on a 48-week basis instead of a 52-week basis. This resulted in certain standard non-wage based accounts being overcharged.

3

insurance in effect due to age-based reductions. In all, the parties were able to identify over 1600 accounts to be further researched to determine the amount of overcharges. Union Central's personnel then began to quantify the overcharges and refunds due. Pursuant to the Settlement Agreement, hundreds of thousands of dollars in overcharges has either been credited, or will be refunded, to policyholders. Moreover, as a result of this lawsuit, Union Central made programming changes to its computer billing system in March 2003 to improve the capability of the system to promptly, accurately and automatically adjust the premiums billed a policyholder as of the effective date of change when age-based reductions in benefits occurs.

## ARGUMENT

I.  **THE REQUIREMENTS FOR CLASS CERTIFICATION UNDER FED. R. CIV. P. 23(a) AND (b)(3) ARE SATISFIED.**

In order for this Court to certify a settlement class, the parties must satisfy both the four-part test of numerosity, commonality, typicality and adequacy required by Fed. R. Civ. P. 23(a), as well as the predominance and superiority requirements of Rule 23 (b)(3). The Plaintiffs will not belabor this discussion, as this Court has previously certified a class in the Royal action and expressed the reasons therefore in a lengthy memorandum in that case.

**Numerosity**

Numerosity is satisfied as there are hundreds of class members from many states (Affidavit of Fredric L. Ellis, ¶ 6) and it would be impracticable to join all of them in the instant action. Herbert Newberg and Alba Conta, *Newberg on Class Action* § 3:04, at 3-17, 25 (3rd ed. 1992 and June 2002 Supp.)(hereafter "Newberg"). *Andrews v. Bechitel Power Corp.*, 780 F. 3d 124, 131-132 (1st Cir. 1985), *cert. denied*, 476 U.S. 1172 (1986.) Other cases have certified classes with much smaller numbers of members. *See, e.g., George Cussier Enters., Inc. v. Subaru of New England, Inc.*, 2001 U.S. Dist. LEXIS 12054, at 10 (D.N.H. Aug. 3, 2001)(class

4

of 75 members located throughout New England).  *Holten v. L.F. Rothschild*, 118 F.R.D., 280, 282 (D. Mass. 1987)("Whether the number is 50 or 60, it is sufficiently large.")

**Commonality**

The commonality requirement is also easily met here.  Whether the class members are entitled to the equitable remedy of restitution is only one of the common issues presented.  All class members had group insurance policies which contained an age-based reduction in benefits.  At the time the age-based reductions were to take effect, Union Central knew the ages of the certificateholders and amounts of insurance that should have been in effect.  All class members had policies that contained substantially identical terms.  Finally, all class members make a common claim for equitable restitution.  As Newberg has written, the commonality requirement "is easily met in most cases," *Newberg*, § 3:10, at 3-50, and such is the case here.

**Typicality**

The proposed class representative's claims against Union Central are also typical of the other class members.  As explained above, the collective claims focus on Union Central's course of conduct and share a common legal theory.  *See Mack v. Suffolk County*, 191 F. R. D. 16, 23 (D. Mass. 2000); *Guckenberg v. Boston University*, 957 F. Supp. 306, 325 (D. Mass. 1997).

**Adequacy**

Both Plaintiff and Plaintiff's counsel have shown that they will fairly and adequately protect the interests of the proposed class.  Plaintiff has diligently prosecuted the Royal action as one of the class representatives, producing discovery and subjecting its personnel to depositions.  Plaintiffs' counsel has vigorously litigated the Royal action and engaged in a substantial effort in investigating Union Central's overcharges.  There can be no doubt that the due process interests

of class members are being protected by the proposed class representative and class counsel. *King v. Gillette Co.*, 782 F. 2d 5, 7 (1st Cir. 1986); *Andrews*, 780 F. 2d at 130.

**Predominance and Superiority**

Turning to the predominance and superiority requirements of Rule 23 (b), there can be little dispute that common issues predominate, especially in the context of a proposed settlement where any manageability issues are not a concern.[6] In the Royal action this Court ruled that "[t]he plaintiffs have met the standard of predominance of common issues[,]" (Memorandum and Order Re: Class Certification, March 10, 2003, p. 18) and that a class action was superior to individual litigation as "resolution through class action proceeding will do nothing but simplify the disposition of these claims." (*Id.*, at 21) (emphasis added).

II.  **THE NOTICE PROCEDURE PROVIDES FAIR NOTICE OF THE SETTLEMENT.**

The Settlement Agreement provides that the Notice will be individually sent to each of the several hundred class members which have been identified as having overpaid premiums due to age-based reductions since January 1, 1999. If any Notices are returned due to a change of address and a forwarding address is provided by the Post Office, the Notice will be re-sent to the new address. If no forwarding address is provided by the Post Office, skip tracing will be employed to attempt to obtain a current address for the policyholder. There can be no doubt that the individual notice contemplated here more than satisfies due process. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 159, 173 (1974).

The Notice also fulfills the requirement of neutrality in class notices and summarizes the terms of the Settlement Agreement in an informative and coherent manner. For example, the

---

[6] As the United States Supreme Court has noted in the settlement context, the "district court need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. R. Civ. P. 23(b)(3)(D), for the proposal is that there be no trial." *Amchem*, 521 U.S. 591, 620 (1997).

Notice includes: (a) the case caption; (b) a description of the Settlement Class; (c) the identity of the Settling Defendant; (d) a description of the terms and conditions of the Settlement Agreement; (e) identification of counsel for the Settlement Class; (f) the date, time and location of the Fairness Hearing; (g) information about and the deadline for filing of comments on and/or objections to the Settlement Agreement; (h) the fact that final approval of the proposed Settlement will result in a dismissal of the claims against Union Central of individual class members; (i) the proposed distribution of the overpaid premiums to individual class members; (j) the procedure for opting-out of the class and the consequences thereof; and (k) a description of how Class Counsel will apply for fees and expenses.  This information and more is applied in the form of answers to simple, direct questions, such as "Why should I read this Notice?", "What are the terms of the proposed settlement?" and "Where can I get additional information?"  The Notice likewise details the settlement approval process, and notifies Settlement Class members of their opportunity to be heard at the Fairness Hearing and the procedure for taking advantage of such opportunity.  Finally, as some of the class members in this action are also class members in the Royal action (and thus will be receiving a separate notice in that action), the Notice contains an explanation of the Royal action and its relationship with this case.

### III.  THE SETTLEMENT AGREEMENT IS FAIR, ADEQUATE AND REASONABLE.

At this stage of the proceedings, where the parties only seek conditional certification of a settlement class and an order of notice, full judicial review of the proposed Settlement is premature.   Rather, conditional certification should be granted and notice should issue "[i]f the preliminary evaluation of the Settlement Agreement does not disclose grounds to doubt its fairness or other obvious deficiencies."  Federal Judicial Center, *Manual for Complex Litigation*

*3d.*, § 30.41 (1995 ed.).  Even upon closer examination, however, the terms of the Settlement Agreement warrant preliminary approval.

First, the fact that the proposed agreement is the product of sustained negotiations is an early indication of a good settlement.  "Fair settlements are those that result from good faith, arm's-length bargaining between experienced counsel."  *State of New York v. Reds Corp.*, 1954 U.S. Dist. LEXIS 3362, at *4 (S.D.N.Y. March 21, 1996).  *See also Newberg* § 11:42 ("[a]n initial presumption of fairness is usually involved if the settlement is recommended by Class Counsel after arm's-length bargaining.")  Here, the Settlement Agreement followed lengthy, principled, arm's-length bargaining among experienced counsel.  The negotiations lasted over a year.

While Plaintiff believes its case on the merits is strong, it also believes that the Settlement achieves a substantial recovery for class members.  First, class members will be, or have been, refunded <u>all</u> overpayments made since January 1, 1999.  Secondly, class members need do nothing to obtain their credit or refund – it will either be credited on their bill or be mailed to them upon final approval.  Finally, not only is Union Central paying all costs of notice and administration of the Settlement but, as an additional benefit to the class, is paying Class Counsel's fees and expenses in addition to the amounts being paid to class members.  Thus, class members will receive full restitution while not having to contribute anything for Class Counsel's substantial work in achieving the Settlement.[7]

Finally, as part of the Settlement, Union Central has made programming changes to its computer billing system to improve the capability of the system to promptly, accurately and automatically adjusts the premiums billed a policyholder as of the effective date of change when

---

[7] Due to Union Central's cooperation and the recent nature of the overcharges, Plaintiff's counsel did agree that Union Central would not have to pay interest on the overpayments.

an age-based reduction in benefits occurs. This will result in substantive savings of future overpayments as a direct result of Class Counsel's efforts in this case.

## CONCLUSION

Because the terms of the proposed Settlement Agreement are fair, adequate and reasonable, Plaintiff respectfully requests that this Court issue the Proposed Order Preliminarily Approving Settlement, which is attached as Exhibit 2 to the Settling Parties' Joint Motion for Preliminary Approval of Class Action Settlement, Conditional Certification of Settlement Class and Commencement of Settlement Approval Process.

      Respectfully submitted
      For the Plaintiff,

      s/Fredric L. Ellis
      Fredric L. Ellis, BBO # 542075
      Edward D. Rapacki, BBO # 411910
      Joseph M. Makalusky, BBO # 631240
      ELLIS & RAPACKI LLP
      85 Merrimac Street, Suite 500
      Boston, MA 02114
      (617) 523-4800

Dated: March 17, 2004

## CERTIFICATE OF SERVICE

I hereby certify that on this date a true copy of the above document was served upon counsel for the defendant, S. David McNeill, Esq. at Freeman McNeill, 185 Oakland Ave., Suite 260, Birmingham, MI 48009 by first class mail, postage prepaid.

      s/Fredric L. Ellis
      Fredric L. Ellis

Dated: March 17, 2004