## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PROVIDENCE STEEL, INC., individually and on behalf of a class of persons similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>THE UNION CENTRAL LIFE INSURANCE COMPANY,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

CIVIL ACTION NO: 04-10440-NG

### PLAINTIFF'S MEMORANDUM IN SUPPORT OF JOINT MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND FOR AWARD OF ATTORNEYS' FEES

### INTRODUCTION

Plaintiff and Class Representative Providence Steel, Inc. ("Plaintiff"), individually and on behalf of a class of persons similarly situated, submits this memorandum of law in support of the accompanying Joint Motion for Final Approval of Class Action Settlement (the "Joint Final Approval Motion"). The Union Central Life Insurance Company Group Insurance Policyholders Settlement Agreement dated March 3, 2004 ( "Settlement Agreement") was preliminarily approved by this Court on March 24, 2004. Thereafter, notice of the Settlement (in a form approved by this Court) was mailed to eight hundred and twenty-four (824) class members. Not a single member of the Settlement Class lodged an objection against the Settlement and none filed a separate notice of appearance. There are just two Settlement Class members who requested exclusion from the Settlement. *See* Affidavit of Fredric L. Ellis ("Ellis Affidavit"), which is submitted herewith, at ¶ 8 and Exhibit 1 attached thereto.

The parties in the above-captioned matter now move this Court to grant final approval to the Settlement.  The parties have complied with the mandate of providing the Settlement Class members with notice of the Settlement, and the proposed Settlement Class satisfies the Fed. R. Civ. P. 23 requirements to merit class certification.  Further, as the absence of any objection to the Settlement and the statistically insignificant number of opt-outs attest, the Settlement is fair, reasonable, adequate and in the best interest of all class members.  Finally, the amount of attorneys' fees and expenses that the defendant, The Union Central Life Insurance Company ("Union Central"), has agreed to pay to Class Counsel (above and beyond what Union Central has agreed to pay to the Settlement Class) is reasonable and fair.  This Court should, therefore, grant its final approval to the Settlement pursuant to Fed. R. Civ. P. 23(e).  A proposed final order is attached as Addendum A to the Joint Final Approval Motion.

## BACKGROUND

I.    **THE LITIGATION**

The case against Union Central arose out of the related litigation, *Shabshelowitz, et al. v. Royal Maccabees Life Insurance Company n/k/a Reassure America Life Insurance Company*, C.A. No. 98-12121-NG (D. Mass.) (the "Royal action").  The Royal action was filed on October 20, 1998, alleging that the defendant, Royal Maccabees Life Insurance Company n/k/a Reassure America Life Insurance Company ("Royal"), had been unjustly enriched by billing and collecting premiums from group policyholders for life insurance and accidental death and dismemberment benefits that were not in effect for certain certificateholders.  Specifically, the complaint, as later amended in the Royal action, and the complaint against Union Central allege that the group insurance policies contained an age-based reduction of benefits clause, and that Royal (and later, Union Central) was aware of the certificateholders' ages and the reduction in

benefits when a certificateholder turned the age of 65 or 70, yet continued to bill the policyholder for premiums based upon the non-reduced amount of benefits.

Since 1998, the Royal action has been extensively litigated with Royal producing limited documents and Class Counsel conducting numerous depositions. Approximately ten months after the Royal action was commenced, in August 1999, Royal sold its group insurance business to Union Central. As part of the sale, Union Central acquired those group insurance policies which were, (i) written by Royal, (ii) in force after January 1, 1999 and (iii) administered by Royal immediately preceding the date of the sales agreement, including, Group Policy No. 01285 issued to the named Plaintiff.

In the Royal action, after litigating many discovery disputes and defeating two motions for summary judgment, the plaintiffs moved for class certification. On March 10, 2003, this Court certified a plaintiff class against Royal.[1] *See* Memorandum and Order re: Class Certification, dated 3/10/03 ("Royal Class Certification Order").

During the litigation against Royal, it became clear that Royal had not corrected its computer billing programs so that premiums would be reduced when an age-based reduction in benefits occurred prior to the sale of the group insurance business to Union Central. Thus, the overcharging of group policyholders continued after August 1999. As a result of discovery taken in the Royal action, Union Central's attorneys and executives became aware of the overcharging. Settlement discussions began with Union Central in 2002, and the Settlement was finally executed on March 3, 2004. Pursuant to the Settlement, Plaintiff filed the putative class action complaint against Union Central on March 4, 2004.

---

[1] On January 15, 2004, this Court amended the class definition in the Royal action to, *inter alia*, include only those overpayments made through December 31, 1998.

II.    **DISCOVERY**

In early 2002, Class Counsel conducted depositions of Union Central personnel (who were former Royal employees).  By this time, Class Counsel had been litigating the Royal action for more than three years.  Later in 2002, with the assistance of Class Counsel, Union Central began conducting an investigation into, *inter alia*, identifying the overcharged accounts and quantifying the amounts of such overcharges.  After over a year of Union Central conducting an investigation with the assistance of Class Counsel, Union Central was able to identify three types of accounts where overcharging may have occurred.  The three types were: (1) specially coded accounts (*i.e.*, those coded "4" or "5" out a $1 - 9$ computer billing coding system); (2) standard coded accounts (*i.e.*, those coded 1-3 or 6-9) where insurance benefits were based on the amount of a certificateholder's annual salary; and (3) certain standard coded non-wage based accounts.[2]

For the first two categories, Union Central was able to print out lists that identified all such accounts that had been active at any time since January 1, 1999, and had a certificateholder over the age of 65 since that date.  As to the third category, a review of all the available Integrity Reports[3] generated since 1999 revealed approximately 150 standard coded non-wage based accounts where the amounts billed did not match the amounts of insurance in effect due to age-based reductions.  Class Counsel spent hundreds of hours reviewing these and other documents in an attempt to ensure that all policyholders who had been overcharged at any time since January 1, 1999 were properly identified.  Ellis Affidavit, ¶ 4.  In all, the parties were able to identify over one thousand six hundred (1,600) group insurance accounts to be further researched

---

[2] This third category of over-billed accounts occurred due to a computer "glitch."

[3] Royal programmed its computer billing system to generate monthly reports (*i.e.*, Integrity Reports) that would identify certificateholders who were over the age of 65 or 70 and show the amount of benefits for which the policyholders were being billed, so that those accounts could be reviewed for accurate billing.

to determine the amount of overcharges. Union Central's personnel then began to quantify the refunds due, and Class Counsel spent several hundred more hours auditing these calculations in an attempt to ensure that the refunds due for premium payments made after January 1, 1999 were properly calculated. Ellis Affidavit, ¶ 5.

## III.    THE SETTLEMENT NEGOTIATIONS

The parties' settlement discussions commenced in 2002. Ellis Affidavit, ¶ 2. Beyond the conferences and informal exchange of information, Class Counsel diligently continued discovery to identify overcharged accounts, quantify the overcharge amounts and to confirm the merits of the claims. *Id.* at ¶ 3. The investigation, exchange of information and intense discussions extended for more than a year. *Id.* at ¶ 2. There were extensive negotiations concerning the identification of class members, the quantification of overcharges, the form of release, the form of notice, the refund/credit process, the corrective action to be taken with respect to Union Central's computer billing system and all other salient terms of the Settlement. *Id.* It was only after an agreement was reached with respect to a proposed settlement of the class claims that the parties began discussions concerning attorneys' fees and expenses to be paid by Union Central as an additional benefit to the Settlement Class on top of the restitution to be made to the Settlement Class. *Id.* at ¶ 7. The results of these arm's-length negotiations were memorialized in the Settlement executed on March 3, 2004. *See* Settlement Agreement.

## IV.    THE SETTLEMENT TERMS

### A.    The Settlement Class

The Settlement Agreement defines the Settlement Class as follows:

All employers, whether persons, partnerships, corporations or other entities, who or that:

(A)  were policyholders of Group Insurance Policies that were insured and administered by The Union Central Life Insurance Company ('Union Central') and/or Royal Maccabees Life Insurance Company, now known as Reassure America Life Insurance Company ('Royal'), at any time after January 1, 1999;

(B)  paid premiums to Union Central and/or Royal at any time on or after January 1, 1999, that were not reduced to reflect the amount of benefits in effect based on the ages of the certificateholders; and

(C) were not credited with such overpaid premiums by Union Central and/or Royal in their next billing statement.

For purposes of this class definition, 'Group Insurance Policies' shall mean those insurance policies that provided life insurance (basic or supplemental) and/or accidental death and dismemberment coverage for the policyholders' current and/or former employees, and contained age-based reductions of benefits clauses.

Specifically excluded from the Settlement Class are Federal Judges and Magistrates and their immediate families, Union Central and Royal, any parent, subsidiary or affiliate of Union Central or Royal, any entity in which Union Central or Royal has a controlling interest, and Union Central's and Royal's officers, directors, employees and their immediate families.

Also excluded from the Settlement Class shall be any employers who or that submit a valid Request for Exclusion in accordance with the procedures set forth in paragraph **IV.B**, below.

Settlement Agreement, ¶ I.A.

### B.    <u>The Settlement Benefits</u>

First, class members will be, or have been, refunded *all* overpayments made since

January 1, 1999.  *See* Settlement Agreement, ¶ II.D.  Secondly, class members need do nothing

to obtain this full restitution – the amount will either be credited on their bill or

a refund check will be mailed directly to them within sixty (60) days from final approval.[4]  *Id.* at ¶

VI.B.1.  Finally, not only is Union Central paying all costs of notice and administration of the

settlement but, as an additional benefit to the Settlement Class, is paying Class Counsel's fees

and expenses in addition to the amounts being paid to class members.[5]  *Id.* at ¶ II.H.  Thus, the

Settlement Class members will receive full restitution while not having to contribute anything for

Class Counsel's substantial work in achieving the settlement.[6]  Finally, as part of the settlement,

Union Central has made programming changes to its computer billing system to improve the

capability of the system to promptly, accurately and automatically adjust the premiums billed a

policyholder as of the effective date of change when an age-based reduction in benefits occurs.

*Id.* at ¶ II.G.  This will result in substantive savings of future overpayments as a direct result of

Class Counsel's efforts in this case.

## V.    <u>PRELIMINARY APPROVAL</u>

On March 24, 2004, this Court entered an Order Preliminarily Approving the Union

Central Life Insurance Company Group Insurance Policyholders Settlement (the "Preliminary

Approval Order").  Pursuant to the Preliminary Approval Order, the Settlement Class, as defined

above, was conditionally certified under Fed. R. Civ. P. 23(a) and (b)(3).  Preliminary Approval

---

[4]  It is also worth noting that the Settlement provides that:

> [i]n the event that a refund check is returned to Union Central or Class Counsel or not cashed
> by a Settlement Class member within one hundred and twenty (120) days from the date the check
> was mailed, such payment shall be made to a charitable organization jointly selected by Union
> Central and Class Counsel and approved by the Court.  All refund checks shall note on their face
> that they are valid only for one hundred and twenty (120) days.

Settlement Agreement,  ¶ VI.B.1.

[5]  Union Central also has agreed to make a $2,000.00 payment to Plaintiff as the Class Representative without
diminishing the amount to be paid to the Settlement Class.  Settlement Agreement, ¶ II.F.

[6]  Due to Union Central's cooperation and the recent nature of the overcharges, Class Counsel did agree that Union
Central would not have to pay interest on the overpayments.

Order, dated 3/24/04, ¶¶ 3-4.  Further, Providence Steel, Inc. was appointed Class

Representative, Fredric L. Ellis was appointed Plaintiff's Lead Counsel and the firms Ellis &

Rapacki LLP and Assiran, Ellis & Devlin were appointed as Class Counsel.  *Id.* at ¶ 5.  The

Court also found that for purposes of preliminary approval the Notice of the Settlement proposed

by the parties satisfied the requirements of Fed. R. Civ. P. 23 and due process, and directed

Union Central to mail a copy of such Notice to each member of the Settlement Class.  *Id.* at ¶¶ 6-

7.  A hearing on final approval of the Settlement is scheduled for July 22, 2004.

## VI.    THE NOTICE, OPT-OUTS AND LACK OF OBJECTORS

In accordance with the Preliminary Approval Order, Union Central mailed a copy of the

Notice to eight hundred and twenty-four (824) group insurance policyholders who are members

of the Settlement Class.  Affidavit of Bill Pike ("Pike Affidavit"), ¶ 3.  The court-approved

Notice informed these class members of, *inter alia*, (i) the nature of the action, (ii) the definition

of the Settlement Class, (iii) the class claims and defenses, (iv) that a class member may enter an

appearance through counsel if the member so desires, (v) that the court will exclude from the

Settlement Class any member who requests exclusion, stating when and how members may elect

to be excluded, and (vi) the binding effect of a class settlement on Settlement Class members.

*See* Notice, attached as Exhibit 1 to Pike Affidavit.

Under the Preliminary Approval Order, requests for exclusion from the Settlement Class

were to be post-marked by no later than June 23, 2004.  Ellis Affidavit, ¶ 8.  Of the eight hundred

and twenty-four (824) Settlement Class members, only two (2) elected to opt out of the

Settlement.  *Id.* at ¶ 8.  There were no objections to the Settlement, and no Settlement Class

member filed a separate notice of appearance.  *Id.* at ¶ 8.

## ARGUMENT

I.    **NOTICE TO THE POTENTIAL SETTLEMENT CLASS MEMBERS WAS ACCOMPLISHED IN ACCORDANCE WITH THIS COURT'S ORDER.**

As part of the Preliminary Approval Order, this Court (i) approved the format of the Notice of the Settlement proposed by the parties, (ii) found that dissemination of the Notice as proposed by the parties satisfied the requirements of Fed. R. Civ. P. 23 and due process and (iii) directed Union Central to mail the Notice to each of the Settlement Class members. Preliminary Approval Order, ¶¶ 6-7. This Court's instructions concerning notice to the Settlement Class members were strictly followed by the parties.

Working together, Union Central and Class Counsel were able to identify - - by policy number, policyholder name and last known address - - eight hundred and twenty-four (824) members of the Settlement Class. Pike Affidavit, ¶ 2. Between May 19 and 20, 2004, Union Central mailed a copy of the Notice to all 824 policyholders.[7] *Id.* at ¶ 3. Of the 824 Notices mailed to the members of the Settlement Class, only thirty-three (33) were returned by the United States Post Office to Union Central. *Id.* at ¶ 4. Of these, forwarding addresses for twenty-three (23) policyholders were located and a copy of the Notice was then mailed to each forwarding address. *Id.* In the end, just ten (10) of the 824 Notices were undeliverable. *Id.* Hence, this Court should conclude that the notice requirements of Fed. R. Civ. P. 23(c)(2)(B) and due process have been satisfied for purposes of granting final approval to the Settlement.

---

[7] The format of the Notice mailed by Union Central was identical to the one approved by this Court; the only differences between the two is that the Notice mailed to the Settlement Class members included the date and location of the Fairness Hearing, the date that preliminary approval was granted, the deadline for opt-outs and the P.O. Box number to which opt-outs were to be mailed. *See* Notice, attached as Exhibit 1 to Pike Affidavit.

## II.    THIS COURT SHOULD CERTIFY THE SETTLEMENT CLASS, SINCE THE REQUIREMENTS OF FED. R. CIV. P. 23(a) AND (b)(3) ARE SATISFIED.

It almost goes without saying that absent a certified class, there can be no class action settlement.  *See Bussie v. Allmerica Fin. Corp.*, 50 F. Supp.2d 59, 69 (D. Mass. 1999)("Before addressing whether the settlement is fair, adequate and reasonable, this court must certify the class.")  *See also* Fed. R. Civ. P. 23(e)(1)(A)("The court must approve any settlement, voluntary dismissal, or compromise of the claims, issues, or defenses of a certified class.")  For preliminary purposes this Court certified a Rule 23(b)(3) Settlement Class, and this Court should now certify the Settlement Class as part of its final approval of the Settlement.

"The initial inquiry required by Rules 23(a) and (b) does not involve an examination of the merits of the underlying case, but rather serves the limited purpose of determining whether a class action is the most appropriate mode of adjudicating plaintiff's claims."  *Mack v. Suffolk County*, 191 F.R.D. 16, 22 (D. Mass. 2000), citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974).  In the end, "'when a court is in doubt as to whether to certify a class action, it should err in favor of allowing a class.'"  *Odom v. Mass. Mut. Life Ins. Co.*, 2002 U.S. Dist. LEXIS 9944, at *8 (D. Mass. May 15, 2002), quoting *In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 297, 303 (E.D. Mich. 2001).  This is particularly true when a court is asked to certify a class for settlement purposes only, as opposed to a litigation class, since there are no issues of manageability for trial and there is a healthy preference for settlement.  Here, the decision is not particularly difficult, especially as this Court already has certified a nearly-identical class in the Royal action.

### A.    RULE 23(a) IS SATISFIED BY THE PROPOSED SETTLEMENT CLASS.

For any class to be certified, it must first be shown that "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the

class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). *Accord Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 613 (1997). The four Rule 23(a) hurdles are cleared with ease in this case.

### 1.    The Proposed Settlement Class Is So Numerous And Geographically Diverse That Joinder Of Its Members Is Impracticable.

There are eight hundred and twenty-two (822) identified members of the proposed Settlement Class,[8] and they come from forty-three states, the District of Columbia and Puerto Rico. *See* Ellis Affidavit, ¶ 8. Given that the numerosity requirement of Rule 23(a) is just an examination of practicality, Herbert Newberg & Alba Conte, Newberg on Class Actions § 3.04 (3rd ed. 1992 & Dec. 2003 Supp.), it is beyond cavil that the test has been passed in this case. If not entirely impossible, it certainly is impracticable to join all 822 members of the geographically diverse Settlement Class in this lawsuit. *See Kilgo v. Bowman Transp., Inc.*, 789 F.2d 859, 878 (11th Cir. 1986); *George Lussier Enters., Inc. v. Subaru of New England, Inc.*, 2001 U.S. Dist. LEXIS 12054, at *10 (D.N.H. Aug. 3, 2001); *Holton v. L.F. Rothschild*, 118 F.R.D. 280, 282 (D. Mass. 1987).

### 2.    There Are Questions Of Law And Fact That Are Common To The Proposed Settlement Class.

The second requirement is that the claims raise common questions of law or fact. Fed. R. Civ. P. 23(a)(2). *See also* 5 Moore's Federal Practice, § 23.23[2], at 23-76 (3rd ed. & Mar. 2004 Supp.)("the commonality requirement is satisfied if the class shares even one common question of law or fact.") Obviously, the Rule "does not require that class members' claims be identical."

---

[8]  This excludes the two group insurance policyholders that have decided to opt-out of the proposed Settlement Class.

*Boulet v. Cellucci*, 107 F. Supp.2d 61, 81 (D. Mass. 2000). Instead, there simply must exist some question, which, when answered as to one class member, is answered as to all.

Among the number of questions that are relevant to the entire Settlement Class are the following: whether Plaintiff and the other members of the Settlement Class are entitled to restitution; whether Union Central should be ordered to disgorge its wrongfully obtained profits received as a result of its overcharging of Plaintiff and the other members of the Settlement Class for insurance benefits that were not in effect due to age-based reductions; and whether, and by what amount, Union Central has been unjustly enriched by its practice of billing and collecting premiums from Plaintiff and the other members of the Settlement Class for insurance benefits that were not in effect due to age-based reductions. Like in the Royal action, "commonality [is] well established on these facts." Royal Class Certification Order, at 9.

### 3.    The Claims Of Plaintiff Are Typical Of The Claims Of The Proposed Settlement Class.

"'Typicality refers to the nature of the claim of the class representatives, and not to the specific facts from which the claim arose or relief is sought.'" *M. Berenson Co., Inc. v. Faneuil Hall Marketplace, Inc.*, 100 F.R.D. 468, 470 (D. Mass. 1984), quoting *Dura-Bilt Corp. v. Chase Manhattan Corp.*, 89 F.R.D. 87, 99 (S.D.N.Y. 1981). Put differently, in order to establish the requisite nexus between Plaintiff and the other members of the Settlement Class, the collective claims must focus on Union Central's common course of conduct and must share a common legal theory. *See Mack v. Suffolk County*, 191 F. R. D. 16, 23 (D. Mass. 2000); *Guckenberger v. Boston Univ.*, 957 F. Supp. 306, 325 (D. Mass. 1997). "Since the claims only need to share the same essential characteristics, and need not be identical, the typicality requirement is not highly demanding." 5 Moore's Federal Practice, § 23.24[4], at 23-95 – 23-96. Here, the claims are sufficiently similar in that Plaintiff's claims seek the same type of restitution and other equitable

relief from Union Central's overcharges, and are based on the same theories of recovery, as are
the claims of the Settlement Class. Accordingly, the typicality requirement is met.

        **4.**      **Plaintiff And Its Counsel Have Fairly And Adequately Protected The
Interests Of The Proposed Settlement Class.**

Finally, a representative plaintiff must "fairly and adequately protect the interests of the

class." Fed. R. Civ. P. 23(a)(4). This mandate "serves to uncover conflicts of interest between

named parties and the class they seek to represent." *Amchem Products, Inc.*, 521 U.S. at 625.

The rule requires consideration of two factors: "[t]he moving party must show first that the

interests of the representative party will not conflict with the interests of any of the class

members, and second, that counsel chosen by the representative party is qualified, experienced

and able to vigorously conduct the proposed litigation." *Andrews v. Bechtel Power Corp.*, 780

F.2d 124, 130 (1st Cir. 1985), *cert. denied*, 476 U.S. 1172 (1986). Both factors for adequacy of

representation are satisfied here - - as they were in the Royal action. Put simply, there is no

potential conflict, as Plaintiff's claims arise from the same facts and invoke the same theories as

the claims of the Settlement Class, and Plaintiff has every incentive to pursue these claims

vigorously in order to secure class-wide relief.[9] *See Bussie*, 50 F. Supp.2d at 71 (holding that

adequacy prong met where named plaintiff was also victimized by defendant-insurance

company's fraudulent scheme to increase its premium revenues, sales and profits from life

insurance). Tellingly, the absent Settlement Class members appear to be satisfied that their

interests are being adequately and vigorously protected, as there has not been a single objection

or notice of appearance filed. *See* Ellis Affidavit, ¶ 8.

---

[9] Additionally, Class Counsel are "qualified to vigorously and adequately prosecute the interests of the class." *Key
v. Gillette Co.,* 782 F.2d 5, 7 (1st Cir. 1986). Indeed, the firm Ellis & Rapacki LLP has been Class Counsel in
numerous class actions, *see* Ellis Affidavit, ¶ 9, and this Court already has expressed its confidence in the abilities of
counsel. *See* Royal Class Certification Order, at 13.

**B.     THE PROPOSED SETTLEMENT CLASS SATISFIES THE
REQUIREMENTS OF RULE 23(b)(3).**

In addition to meeting the prerequisites of Rule 23(a), the proposed Settlement Class also

meets the "predominance" and "superiority" requirements of Rule 23(b)(3);  that is, "the

questions of law or fact common to the members of the class predominate over any questions

affecting only individual members, and . . . a class action is superior to other available methods

for the fair and efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3).  As such, a

Rule 23(b)(3) Settlement Class should be certified.

What this Court said in certifying a Rule 23(b)(3) litigation class in the Royal action is

equally applicable here:

> liability in this case turns primarily on [Union Central's] conduct of business with
> the proposed class members.  Specifically, the plaintiff[] allege[s] that [Union
> Central] charged policyholders for coverage it was no longer providing.  A single,
> dominant issue therefore emerges:  is [Union Central] entitled to keep the
> excessive insurance premiums it billed and received?  The general applicability of
> this one crucial issue seems to me a sufficient ground to find a predominance of
> common issues for Rule 23(b)(3) purposes.

Royal Class Certification Order, at 15.  Clearly, the predominance prong of Rule 23(b) has been

established.

It is also true that certification of a settlement class would be the superior means to bring

this litigation to an end.[10]  To begin, the interest of absent class members in prosecuting their

own action against Union Central is virtually nonexistent, as evidenced by the fact that only two

policyholders elected to opt-out of the Settlement Class.  *See* Ellis Affidavit, ¶ 8.  *See Bussie*, 50

F. Supp.2d at 7 (given low opt-out numbers, the court concluded that there was "relatively little

---

[10]  The factors to consider under the "superiority" prong of Rule 23(b) are:  "(A) the interest of members of the class
in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation
concerning the controversy already commenced by or against members of the class; (C) the desirability or
undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be
encountered in the management of a class action."  Fed. R. Civ. P. 23(b)(3).

interest in conducting separate lawsuits" for Rule 23(b)(3) purposes).  In addition, aside from the

Royal action, there is no indication of any pending action similar to the instant one.  It is also

desirable to consolidate this action in this particular forum given this Court's familiarity with the

related Royal action and the attending savings of judicial resources, prevention of duplication of

effort and the avoidance of inconsistent verdicts.  Finally, "with respect to the fourth factor, this

Court, deciding whether to certify a settlement-only class, 'need not inquire whether the case, if

tried, would present intractable management problems[.]'"  *Bussie*, 50 F. Supp.2d at 72, quoting

*Amchem Products, Inc.*, 521 U.S. at 620.

Hence, this Court should certify the proposed Settlement Class under Fed. R. Civ. P.

23(b)(3).

## III.    THE SETTLEMENT PROPOSED BY THE PARTIES IS FAIR, REASONABLE AND ADEQUATE.

As Fed. R. Civ. P. 23(e)(1)(C) directs, before approving a settlement of a class action, the

court must determine whether that settlement is fair, reasonable, and adequate.  "This fairness

determination is not based on a single inflexible litmus test but, instead, reflects its studied

review of a wide variety of factors bearing on the central question of whether the settlement is

reasonable in light of the uncertainty of litigation."  *Bussie*, 50 F. Supp.2d at 72.  *Accord Rolland*

*v. Cellucci*, 191 F.R.D. 3, 8 (D. Mass. 2000).  Nevertheless, the policy favoring settlement,

which is particularly strong in the context of a class action, has a significant bearing on a court's

exercise of discretion.  *Durrett v. Housing Auth'y of the City of Providence*, 896 F.2d 600, 604

(1st Cir. 1990).  *See also Lazar v. Pierce*, 757 F.2d 435, 440 (1st Cir. 1985)(Torruella, J.,

concurring)(pointing out "the overriding public interest in favor of the voluntary settlement of

disputes, particularly where class actions are involved."); *Hammon v. Barry*, 752 F. Supp. 1087,

1100 (D.D.C. 1990)("particularly in class action suits, there is an overriding public interest in

favor of settlement"). Moreover, "federal courts have generally considered a variety of factors that may be divided into two categories: (1) those considerations addressing the fairness of the process by which the settlement was negotiated; and (2) those considerations bearing on the substantive fairness of the settlement." *Duhaime v. John Hancock Mut. Life Ins. Co.*, 177 F.R.D. 54, 67 (D. Mass. 1997), *overruled in part on other grounds by*, *Ortega v. Star-Kist Foods, Inc.*, 2004 U.S. App. LEXIS 10714 (1st Cir. June 2, 2004).

### A.    THE SETTLEMENT NEGOTIATIONS WERE PROCEDURALLY FAIR.

In assessing the procedural fairness of the Settlement, this Court may consider "the state of discovery, whether negotiations were arm's length, and whether the attorneys' fees were negotiated after and separate from the proposed settlement." *Duhaime*, 177 F.R.D. at 67. Where, as here, "sufficient discovery has been provided and the parties have bargained at arms-length, there is a presumption in favor of the settlement." *City Partnership Co. v. Atlantic Acquisition Ltd. Partnership*, 100 F.3d 1041, 1043 (1st Cir. 1996). *See also Newberg on Class Actions* at § 11:42 ("[a]n initial presumption of fairness is usually involved if the settlement is recommended by Class Counsel after arm's-length bargaining.")

### 1.    Sufficient Investigation And Discovery Were Conducted Prior To Reaching A Settlement.

There can be no doubt that Class Counsel have conducted a sufficient investigation to have a firm grasp on the merits of the class claims raised in this case to make an educated assessment of the Settlement. In fact, Plaintiff is a named party in both this case and the related Royal action, and Class Counsel successfully opposed Royal's motion for summary judgment as to Plaintiff. Beyond that, Class Counsel deposed several Union Central employees, and during the lengthy period during which Class Counsel and Union Central were engaged in settlement discussions, the parties voluntarily exchanged information. Class Counsel devoted hundreds of

hours to reviewing and analyzing the information received from Union Central in order, *inter alia*, to ensure that the potential Settlement Class members were identified and to audit Union Central's calculation of overcharges. Ellis Affidavit, at ¶¶ 4, 5. These facts weigh in favor of granting final approval to the Settlement. *See Bussie*, 50 F. Supp.2d at 77 ("The parties' enormous discovery effort . . . enabled Lead Counsel to assess the merits of the Class's litigation position and, in turn, to negotiate a principled compromise."); *Giusti-Bravo v. United States Verterans Admin.*, 853 F. Supp. 34, 38 (D.P.R. 1993)(approving class action settlement, where, *inter alia*, "plaintiffs' attorneys were extremely diligent in conducting discovery, and that at the time the settlement agreement was reached an extensive amount of discovery had already been completed.")

>    **2.**    **The Settlement Is The Product Of Negotiations Conducted At Arm's Length.**

Although settlement talks began in 2002, the Settlement was not executed until March 2004. There certainly was no rush to settlement here, and this serves to underscore the fact that the Settlement was scrupulously negotiated. *See Duhaime*, 177 F.R.D. at 68 (nine months between first settlement discussion and signing of Memorandum of Understanding, evidenced that negotiations took place at arm's length). During this period, experienced counsel on both sides engaged in principled, arm's-length bargaining over such matters as the form and content of the release and class notice, the refund/credit process and the corrective action to be taken with respect to Union Central's computer billing system. Ellis Affidavit, at ¶ 2. There were also extensive negotiations concerning the identification of class members and the quantification of overcharges. *Id.* at ¶ 2. There is nothing regarding the negotiations of the Settlement Agreement that would support any grounds to doubt its fairness. "There is no evidence that this settlement was collusive in any way." *Duhaime*, 177 F.R.D. at 68.

**3.    Attorneys' Fees And Expenses Were Not Negotiated Until After Agreement Had Been Reached On Settlement Of The Class Claims, And Payment Of Such Fees And Expenses Do Not Diminish The Payments To The Settlement Class.**

Class Counsel and Union Central held in abeyance the negotiation of attorneys' fees and expenses until after an agreement had been reached on the substantive terms of the proposed settlement for the class.  Ellis Affidavit, ¶ 7.  At the appropriate time, the parties used their best efforts to reach agreement on fees, consistent with the Supreme Court's directive on fee awards, which sets out consensual resolution of attorneys' fee issues as the ideal culmination of successful litigation.  *See, e.g., Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)(request for attorneys' fees should not result in second major litigation and "[i]deally, … litigants will settle the amount of a fee").  Because the terms and amount of attorneys' fees and expenses were not discussed until after an agreement had been reached on the other terms of the settlement, fee considerations could not and did not affect those other terms.  With the substantive terms of the settlement already agreed upon, the task of Union Central's counsel in the succeeding negotiations was to strike the best agreement they could for their clients.  And once Union Central agreed to pay the fees and expenses above and beyond the individual compensation to class members, Union Central "had a particular incentive to bargain strenuously to keep the fee as low as possible."  *Elkins v. Equitable Life Ins. Co.*, 1998 U.S. Dist. LEXIS 1557, *99 (M.D. Fla. Jan. 27, 1998).  *See also Duhaime*, 177 F.R.D. at 68 (where attorneys' fees were not discussed until settlement reached, there was no basis to conclude that settlement negotiations were influence by fees).

**B.    THE SETTLEMENT IS SUBSTANTIVELY FAIR.**

There are a number of factors that a court may analyze to check whether a settlement is substantively fair.  *See Bussie*, 50 F. Supp.2d at 72-78; *Duhaime*, 177 F.R.D. at 68-71.  Relevant

to the instant case are the following considerations: (i) how the relief offered by the Settlement compares to the potential relief available after trial; (ii) the reaction of the Settlement Class merits approval; and (iii) the experienced counsel involved in this case believe that the Settlement is fair, reasonable and adequate.

**1.    The Certain Relief Offered By The Settlement Compares Well To The Relief That Might Be Available To The Settlement Class Members Following Litigation.**

"One factor to consider in weighing the fairness of the settlement is whether the plaintiffs' 'likelihood of success on the merits' balances appropriately against 'the amount and form of the relief offered in settlement.'"  *Duhaime*, 177 F.R.D. at 68, citing *Santana v. Collazo*, 714 F.2d 1172, 1175 (1st Cir. 1983).  Here, that balancing act is made easier by the fact that, although Plaintiff's case is quite strong, the Settlement offers the Settlement Class members *full restitution* of the amounts that they were overcharged since January 1, 1999.  *See* Settlement, Exhibit 1 to Ellis Affidavit, ¶ II.D.  While the members of the Settlement Class will not receive interest on their overpayments, this is a reasonable compromise in settling the case with Union Central given Union Central's cooperation with Class Counsel and the relatively recent nature of the overcharges.  Besides, the Settlement offers the Settlement Class members the chance to avoid the significant expense, delay and uncertainty attendant to litigation.  It is also significant that the overpayments have been or will be returned to the Settlement Class members automatically upon the final approval of the Settlement.  Settlement Agreement, ¶ VI.B.1.  As a direct result of the significant amount of work done by Union Central and Class Counsel in identifying the Settlement Class members and calculating the overcharge amounts, there is no claim form to submit and the Settlement Class members need not produce any documents or other proof of their overpayments.

19

Beyond that, as a result of the settlement, Union Central has made programming changes to the computer billing system to improve the capability of the system to promptly, accurately and automatically adjust the premiums billed a policyholder as of the effective date of change when an age-based reduction in benefits occurs. *See* Settlement Agreement, ¶ II.G. This will result in substantive savings of future overpayments as a direct result of Class Counsel's efforts in this case. Finally, not only is Union Central paying all costs of notice and administration of the Settlement but, as an additional benefit to the Settlement Class, is paying Class Counsel's fees and expenses and a payment to the Class Representative in addition to the amounts being paid to class members. *Id.* at ¶¶ II.F and II.H. Thus, Settlement Class members will receive full restitution while not having to contribute anything for Class Counsel's substantial work in achieving the Settlement.

Compared to the prospect of litigating this putative class action to completion, it is clear that the Settlement provides fair, reasonable and adequate relief to the members of the Settlement Class.

## 2.    Reaction Of The Settlement Class To The Settlement Warrants Approval.

While it is well established that a settlement can be deemed fair notwithstanding a large number of objectors, the proposed settlement here is notable for the complete absence of any objection to its approval and the statistically insignificant number of opt-outs. *See Bussie*, 50 F. Supp.2d at 77 ("The number of requests for exclusion from the settlement, as well as the number and substance of objections filed, is relevant to the Court's analysis of the settlement."); *Rolland*, 191 F.R.D. at 11 (same). As noted earlier, the Notice was mailed individually to 824 group insurance policyholders, and only 2 of those receiving individual notice elected to exclude themselves from the Settlement. *See* Ellis Affidavit, ¶ 8. Even so, neither of these opt-outs

expressed any discontent with the Settlement itself.  *See* Exhibit 1 to Ellis Affidavit.  Given the

reaction of the Settlement Class, it is evident that the Settlement is fair, reasonable and adequate.

### 3.    Class Counsel Believe That The Settlement Is Fair.

Finally, it is persuasive that the Settlement is endorsed by experienced counsel as being

fair, reasonable and adequate.  *Rolland*, 191 F.R.D. at 10; *Bussie*, 50 F. Supp.2d at 77.  Class

Counsel are experienced litigators and the Ellis & Rapacki LLP attorneys in particular have

substantial class action experience.  Ellis Affidavit, ¶ 9.  Not only may this Court rely on the

representations of counsel that the Settlement is fair, but as the Fifth Circuit said, "the trial judge,

absent fraud, or collusion or the like, should be hesitant to substitute its own judgment for that of

counsel."  *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977).  Indeed, the presumption in

favor of approving such settlements reflects an understanding and appreciation that vigorous

negotiations between experienced counsel protects against collusion and advance the Rule 23(e)

fairness concerns.

### IV.    THE AMOUNT OF ATTORNEYS' FEES AND EXPENSES THAT UNION CENTRAL AGREED TO PAY IN EXCESS OF THE PAYMENTS TO THE SETTLMENT CLASS MEMBERS IS REASONABLE.

Pursuant to the Settlement, Union Central has agreed to pay attorneys' fees and expenses

in the amount of ninety thousand dollars ($90,000.00).  Settlement Agreement, at ¶ II.H.

Importantly, such payment to Class Counsel does not diminish the amounts to be paid to the

members of the Settlement Class.  Conversely, "[i]n the event attorneys' fees amounting to less

than those provided for in this paragraph [of the Settlement] are ultimately approved by the

Court, the difference between the amount of attorneys' fees approved and the amount specified

in this paragraph [of the Settlement] shall be retained by Union Central, and not paid as

additional consideration to the Settlement Class."  *Id.*  In assessing the reasonableness of the

requested attorneys' fees and expenses in a common fund case such as this, "the district court, in the exercise of its informed discretion, may calculate counsel fees either on a percentage of the fund basis or by fashioning a lodestar." *In re Thirteen Appeals Arising out of the San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 307 (1ˢᵗ Cir. 1995).  Under either approach, it is evident that the amount of attorneys' fees and expenses that Union Central has agreed to pay is reasonable.

   **A.     THIS COURT SHOULD GIVE GREAT WEIGHT TO THE FACT THAT UNION CENTRAL HAS AGREED TO PAY AN AWARD OF ATTORNEYS' FEES AND EXPENSES IN AN AMOUNT THAT IT DEEMS REASONABLE, AND THAT THERE HAS BEEN NO OBJECTION FROM THE SETTLEMENT CLASS MEMBERS TO SUCH PAYMENT TO CLASS COUNSEL.**

   At the outset, this Court should give great weight to the fact that the amount of attorneys' fees and expenses was negotiated by Union Central and Class Counsel, which discussions did not take place until after an agreement had been reached on the substantive terms of the proposed settlement for the class.  As a result of considerable arm's length negotiations, the parties were able to achieve a resolution of the fee issue by Union Central's agreement to support an application for an award of fees and expenses not to exceed $90,000.00.  Settlement Agreement, at ¶ II.H.  "In the absence of collusion or detriment to the class, the Court should give considerable weight to a negotiated fee amount, assuming that it represents the parties' 'best efforts to understandingly, sympathetically, and professionally arrive at a settlement as to attorneys' fees.'"  *Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 695 (N.D. Ga. 2001), quoting *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 720 (5ᵗʰ Cir. 1974).  Here, there is no question that the fee amount was negotiated at arm's length, and it is evident that Union Central's payment of attorneys' fees and expense is beneficial, not detrimental, to the Settlement

Class in that such payment does not come from the funds that are to be paid to the members of the Settlement Class. The fee award should be approved as reasonable.

It is also significant that the Settlement Class members were informed of the amount and nature of the payment to Class Counsel and had no objection to it.[11] This Notice was mailed directly to over eight hundred potential Settlement Class members and not a single one objected to the amount of attorneys' fees and expenses to be paid by Union Central. It is not too much to infer, therefore, that the Settlement Class members themselves find the payment to Class Counsel reasonable.

**B.    THE LODESTAR APPROACH EVIDENCES THE REASONABLENESS OF THE REQUESTED FEE AMOUNT.**

In conducting a lodestar analysis, this Court would begin by "multiplying the number of hours productively expended by counsel times a reasonable hourly rate." *Lipsett v. Blanco*, 975 F.2d 934, 937 (1st Cir. 1992). *Accord Adams v. Bowater Inc.*, 2004 U.S. Dist. LEXIS 9247, at *10 (D. Me. May 19, 2004). Here, the affidavit submitted by Class Counsel documents the investment of more than 200 hours by attorneys and more than 700 hours by paralegals. Ellis Affidavit, ¶ 6. In light of the extensive investigation conducted, the time involved in identifying members of the Settlement Class and calculating overcharge amounts, and the settlement

---

[11] As the Notice that was sent to each potential Settlement Class member explains:

> 10.  WILL AN AWARD OF ATTORNEYS' FEES DIMINISH THE FINAL SETTLEMENT AMOUNT?
>
> No.  As a further benefit to the Settlement Class, and to ensure that the Settlement Class receives full reimbursement of all Overpaid Premiums, Union Central has agreed to pay, over and above the amounts paid to the Settlement Class members, an award of attorneys' fees and expenses in an amount not to exceed ninety thousand dollars ($90,000).  Counsel for the Settlement Class have agreed to apply to the Court for approval of an award of fees and expenses that is no more than that amount.  Any award of attorneys' fees must be approved by the Court.  You will NOT have to pay any judgment, court costs, or attorneys' fees and expenses for participating in this settlement.

Notice, Exhibit 1 to Pike Affidavit.

negotiations that continued for over a year, the documented hours were reasonably spent in pursuit of the interests of the class.  Moreover, the documented legal services have an aggregate value of over $100,000.00, based on the current, customary rates for work performed by the respective firm.  Ellis Affidavit, ¶ 10.  As the negotiated fee of $90,000 is actually *less* than the amount reasonably expended on this case, the reasonableness of the requested amount is patent.[12]

### C.    THE AWARD TO CLASS COUNSEL IS ALSO REASONABLE WHEN IT IS VIEWED AS A PERCENTAGE OF THE FUND.

The percentage of recovery approach also supports as reasonable the amount of fees and expenses that Union Central has agreed to pay to Class Counsel.  This approach is not limited to cases where a specified "fund" is created by a settlement, instead the analysis may apply whenever a "common benefit" is made available to class members.  *See* Federal Judicial Center, Manual For Complex Litigation Third Ed., § 24.11, at 186 (1995)(defining "common fund" cases as creating "a fund *or benefit* for others in addition to their own clients")(emphasis added); Newberg on Class Actions, at § 14.03 ("When a recovery is based on the level of relevant purchases or transactions involved of class members who file proofs of claim", common fund analysis applies for determining attorney fees award.)  The Settlement Agreement negotiated by the parties creates a common benefit – full restitution (in the form of account credit or a refund check) of all premiums overpaid since January 1, 1999, along with Union Central's agreement to bear the costs of settlement administration and the compensation of Class Counsel and the prospective relief secured by Union Central reprogramming of its computer billing system.  Settlement Agreement, ¶¶ II.D, II.G and II.H.  Indeed, because Union Central has agreed to pay

---

[12]  Given the objectively modest amount of fees and expenses negotiated by Class Counsel, resort to the twelve factors typically used to adjust fee awards, *see Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), is of little practical assistance.  It certainly would be extraordinary to adjust the lodestar amount any lower than the reduction that Class Counsel agreed to accept as part of reaching a compromise with Union Central. *See City of Burlington v. Dague*, 505 U.S. 557, 562 (1992)(Supreme Court has "established a 'strong presumption' that the lodestar represents the 'reasonable' fee[.]")(citation omitted)

an award of attorneys' fees in addition to the compensation payable to Settlement Class members, the Settlement here is even more favorable toward such class members than a traditional common fund case, wherein an award of attorneys' fees is deducted from the fund available to class members. The amount of overpayments made by the Settlement Class members who were overcharged since January 1, 1999, is estimated to be approximately $250,000.00.[13] Ellis Affidavit, ¶ 5. Moreover, due to Class Counsel's efforts, many of the class members and accounts were corrected in 2001 and 2002, which saved class members a substantial amount of premiums that would have been overpaid from 2001 to the present.

The $90,000 that Union Central has agreed to pay as attorneys' fees and expenses should also be added to the fund. *See In re Domestic Air Transportation Antitrust Litig.*, 148 F.R.D. at 354 (whether settlement benefits used to pay attorneys or to distribute certificates to class members, "the expenditure inures to the benefit of the class"); Manual for Complex Litigation 3d, at § 30.42 (sum of attorneys' fees and expenses paid by defendant "ordinarily should be treated as a settlement fund for the benefit of the class"). Indeed, if courts did not factor into the common fund analysis amounts for settlement administration and attorneys' fees that, by agreement, are to be paid by defendants, there would be no incentive for class counsel to negotiate for such terms and no incentive for defendants to negotiate for the lowest possible fee award. Only the absent class members would suffer from such an approach.

Hence, the value of the recovery secured by Class Counsel is approximately

---

[13] The parties agreed that when a class member has already received a full credit of the amount overpaid, Union Central did not have to calculate the exact amount that was credited. Rather, this estimate is based upon a sample of approximately 20% of the accounts where the full amount of credits were calculated.

$340,000.00.[14]  The amount that Union Central has agreed to pay to Class Counsel, therefore, equates to slightly more than 25% of the fund.  This percentage is certainly well within the realm of reasonableness.  Indeed, "[t]he majority of common fund fee awards fall between 20% and 30% of the fund."  *Camden I Condominium Ass'n v. Dunkle*, 946 F.2d 768, 774 (11the Cir. 1991), citing H. Newberg, Attorney Fee Awards § 2.08, at 51 (1986).  *See also Shaw v. Toshiba Am. Info. Sys., Inc.*, 91 F.Supp.2d 942, 972 (E.D. Tex. 2000)(noting studies that show that "regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of recovery.")  Given that (i) Class Counsel have secured, *inter alia*, *full restitution* for the Settlement Class members, (ii) the requested award of attorneys' fees and expenses is less than the amount actually expended by Class Counsel on the case, and (iii) the payment to Class Counsel will not diminish the payments to be made to the Settlement Class members, it is evident that the negotiated amount of attorneys' fees and expenses should be approved as reasonable by this Court.

---

[14]  The economic value of the settlement is actually much higher than this amount, in that Union Central has agreed to bear the cost of administering the settlement, including providing notice to the Settlement Class, and has made programming changes to its computer billing system programming changes to improve the capability of the system to promptly, accurately and automatically adjusts the premiums billed a policyholder.  *See* Settlement Agreement, ¶ II.G.  Thus, as a result of Class Counsel's efforts, class members will not be over-billed in the future.

## CONCLUSION

Based on the foregoing reasons, Plaintiff respectfully asks this Honorable Court to enter an Order in the form attached as Addendum A to the Joint Final Approval Motion granting final approval of the class action settlement and awarding attorneys' fees and expenses.

Respectfully submitted
For the Plaintiff,

s/Fredric L. Ellis
Fredric L. Ellis, BBO # 542075
Edward D. Rapacki, BBO # 411910
Joseph M. Makalusky, BBO # 631240
ELLIS & RAPACKI LLP
85 Merrimac Street, Suite 500
Boston, MA 02114
(617) 523-4800

Dated:  July 8, 2004

## CERTIFICATE OF SERVICE

I hereby certify that on this date a true copy of the above document was served upon counsel for the defendant, S. David McNeill, Esq. at Freeman McNeill, 185 Oakland Ave., Suite 260, Birmingham, MI  48009 by first class mail, postage prepaid.

s/Fredric L. Ellis
Fredric L. Ellis